## J. H. ANDERSON v. STATE.

No. A-3694. Opinion Filed Feb. 6, 1922.
Rehearing Denied April 17, 1922.
(207 Pac. 977.)

(Syllabus.)

1.  **Appeal and Error—Information—Sufficiency Where First Objected to on Introduction of Evidence or on Appeal.**—Where defendant goes to trial, and for first time objects to the information when state attempts to introduce testimony thereunder, or upon appeal, the objection should be overruled, if by any intendment or presumption the information can be sustained.

2.  **Banks and Banking—Information Charging Cashier with Making False Report to State Officials.—Sufficiency.**—For information held sufficient to charge an offense under section 269, Rev. Laws 1910, and reasons therefor, see statement of the case and body of the opinion.

3.  **Same—Evidence Supporting Conviction.—Evidence** examined and held sufficient to support the verdict and judgment.

4. **Same—Instruction Following Statute.**—Instruction, defining offense which substantially follows the language of the statute, is held not to be erroneous.

5. **Appeal and Error—Discretion of Lower Court—Refusal of Continuance.**—Applications for a continuance are addressed to the discretion of the trial court. The trial court's action on such an application will not be disturbed, unless a manifest abuse of discretion appears.

6. **Continuance—Grounds—Absence of Counsel.**—Absence of counsel is not made one of the statutory grounds for a continuance. If, however, the trial court's action in overruling an application based on this ground resulted in depriving defendant of the benefit of counsel, or even if it appeared from the record that defendant had a substantial defense to the charge which he was unable to present by reason of the absence of counsel, this court would unhesitatingly set aside a conviction for failure to grant a reasonable continuance.

7. **Same—Refusal of Further Continuance not Abuse of Discretion.** Where defendant has employed two counsel, one of whom is present in court and asks a continuance in order that the absent counsel may have an opportunity to present a "technical defense," without stating in the application what such defense is, and the trial court continues said cause until the following day in order to give defendant an opportunity to make further arrangements for trial, we find no abuse of discretion in overruling a further motion for continuance presented on the second day, still based on the absence of leading counsel.

Appeal from District Court, Custer County; Thomas A. Edwards, Judge.

J. H. Anderson was convicted of the crime of willfully and knowingly making a false report, with intent to deceive, as to the condition of the bank of which he was cashier, and appeals. Affirmed.

See, also, 21 Okla. Cr. 177, 204 Pac. 132.

On the 18th day of October, 1919, an information was filed in the district court of Custer county, Okla., charging the defendant, J. H. Anderson, with the crime of willfully, knowingly and feloniously subscribing to and making a false

written report of the affairs, financial condition, and property of the Farmers' State Bank of Weatherford, Okla., with intent to deceive the State Bank Commissioner, the State Banking Board, and other persons to the informant unknown. The information alleges, in substance, that said defendant, being cashier of the Farmers' State Bank of Weatherford, Okla., prepared and signed a written report showing the financial condition of said bank as of the close of business of the 12th day of May, 1919; that said report discloses that the loans and discounts of said bank owned by it on said date amounted to a sum equal to the value of $107,258.74, and that certain warrants owned and held by it were of the value of $37,352.59; that said defendant then and there knew that said report was false and untrue, in that the loans and discounts of said bank on said date amounted to only the sum of $83,336.57, and the amount of warrants amounted only to $28,824.89; that the difference in the amount of loans and discounts and the amount of warrants, as shown by said report and as actually existing, was due to the fact that among the loans and discounts and warrants included in said report were certain notes and warrants that were forged and counterfeit instruments, which said fact was then and there well known to the defendant. A list and copy of said notes and warrants are set out in the information. The information charges that said report was by the defendant made with the willful and felonious intent to deceive the Bank Commissioner and the Banking Board of the state of Oklahoma, and other persons to the informant unknown, as to the true financial condition and property of said bank, as of said 12th day of May, 1919.

No demurrer was filed by the defendant to this information, but, upon arraignment to same, the defendant entered his plea of "not guilty," and upon the issues so joined and on the 4th day of November, 1919, said cause was called for trial

in the district court of Custer county, Okla. On said date the defendant filed an application for a continuance, and the court made an order continuing the case to November 5, 1919, at which time the defendant filed an additional application for a continuance, which application was overruled, and the case proceeded to trial, resulting in a verdict of conviction and the imposition of a punishment of imprisonment in the state penitentiary for a period of three years.

The evidence in this case shows that the defendant, J. H. Anderson, on the 12th day of May, 1919, and for several years prior thereto, was cashier of the Farmers' State Bank of Weatherford, Okla., and was during all of said time the active managing officer of said bank. That Roy A. Cooper, an Assistant Bank Commissioner of the State of Oklahoma, in the month of July, 1919, made an examination of said bank, and from said examination found there were included in the bills receivable of said bank certain notes aggregating the face value of $23,922.17, which were forged and counterfeit instruments; that among the warrants held by said bank were five warrants of the face value of $8,527.70, which were forged and counterfeit instruments. That at the time of the examination of said bank there were present the defendant, J. H. Anderson, Walter Anderson, brother to the defendant, A. A. Gray, and Wm. A. Umbach, and J. S. Wilks.

The witness Cooper testified:

"Q. Now, I will ask you, Mr. Cooper, whether as an Assistant Bank Commissioner of the State of Oklahoma you made an examination of the Farmers' State Bank of Weatherford, Okla., and, if so, when? A. I examined them in July, 1919.

"Q. That was at Weatherford, in Custer county, in this state? A. Yes, sir.

"Q. Who was acting as cashier of the bank on that date?
A. J. H. Anderson.

"Q. Was he present on that date? A. He was.

"Q. When you made that examination? A. Yes, sir.

"Q. Were any of the other officers or directors present?
A. The assistant cashier, Mr. Gray, and a brother of Mr. Anderson—I don't remember his given name—were present; later in the evening Mr. Umbach and Mr. Wilks were present.

"Q. Now, just detail to the jury what you did when you went into the Farmers' State Bank at Weatherford at the time of this examination. A. The first thing I did was to verify the cash, as shown by the books; then I listed the discounts, that's the notes, and took what is known as a transcript of the bank; verified the time certificates and the cashier's checks outstanding; inquired as to the notes as shown, and was told by Mr. Anderson that a number of them were forged. Do you want me to—

"By Mr. Mitchell: Now, that is objected to as not responsive to the question—that latter part, with reference to the forgery of the notes.

"By the Court: Do you move to strike it out?

"By Mr. Mitchell: Yes.

"By the Court: It will be stricken at this time.

"By Mr. Zwick: Exception—yes, sir.

"Q. In making this examination as to the notes and warrants in the bank did you find any of them to have been forged? A. I did.

"Q. I wish you would detail to the court and jury how you ascertain that fact.

"By Mr. Mitchell: Now, this testimony is objected to for the reason that the same is without the issues in this case.

"The Court: Overruled.

"Counsel for the Defendant: Save an exception.

"A. My suspicions were directed, first, to a note which had been raised from some $700 to $1,700 and another from some $400 to $1,400. I asked Mr. Anderson which amount he was carrying, and he said he was carrying the latter amount. I took—I asked where these parties were. He said one lived near Custer, and another lived near Arapaho and—or near Thomas, and I told him to secure an automobile; that I intended to go and inquire of these parties if that note, or those notes, were the ones that they had executed. About that time a clerk of a school district—I don't just recall the school district now, came in with reference to some warrants which had been discounted by the Farmers' State Bank, in Oklahoma City. I was sitting at the desk, right back of the work room; Mr. Anderson was standing leaning on the desk to my right. I took—I made a certified copy of these two warrants, and told the clerk if I wanted him further I would call him. He left. Mr. Anderson—I was then what we call listing the big lines; in other words, going through the notes to see who is borrowing large amounts, and then to ascertain if in our judgment the loan is too great for the security. I was listing these, and Mr. Anderson was standing to my right. I looked at him and says, 'What have you got to say now?' He says, 'They're phony.' I says, 'What else is phony?' He says, 'Oh, there's $2,000 or $3,000 in here.' I says, 'Where?' He says, 'In the note case.' I says, 'Can you pick them out?' He says, 'Yes,' and he smiled. He reached around to the left of me, reached into the note case, and he took them out and dealt them out like he was playing cards. I was making a list of them as he was calling them to me, and he put them out faster than I could write. I then asked him if that was all. He said no, there was some warrants that were forged, and he gave me those warrants. I asked him if that was all. He said no, there was some at Kansas City, and he went in and he got his discount sheet and gave me the amounts of the warrants that he had sold in Kansas City; I asked him then if he would make that in writing. He said yes. I went to the front of the bank, asked him for some paper. He offered me letter heads. I told him it was too small, and asked him if he had

some legal paper. He said no. I then left and went out and purchased some legal paper, returned and wrote his statement and handed it to him and asked him: 'Mr. Anderson, is that correct? Is that the facts of it?' He said it was. I asked him to sign it if he would. He says, 'All right.' He signed it, and I swore him to it.''

The state introduced in evidence this sworn statement. This exhibit shows that as early as 1915 down to the date of the examination of the bank in July, 1919, the defendant in this case forged a great number of notes and warrants, and that on the day of the examination of the bank there were in said bank the forged notes and warrants set out in the information in this case; that the correct amount of said forged notes and warrants was $32,449.87.

The witness, William Umbach, testified that he was president of the Farmers' State Bank of Weatherford and that J. H. Anderson was its cashier; that he was well acquainted with the signature of the said J. H. Anderson, and that the signature to the written confession of the defendant as to the forgery of the notes and warrants in the bank was the signature of the defendant herein; that he was present in the bank at the time Mr. Cooper, the Bank Examiner, was conducting his examination of the bank, and that he, the witness, after looking through about half the notes in the bank, asked Mr. Anderson, the cashier, ''You say all of this bunch has been forged—these are all forgeries, you forged them all?'' He says, ''Yes, sir.'' I asked him then, ''What did you do with the money?'' He says, ''That's pretty hard to explain.''

J. S. Wilks testified that he was a director of the bank, and that the defendant had had the active management and supervision of the bank for some three or four years; that during the examination of said notes by Mr. Cooper, in the presence of Mr. Umbach and the witness, the defendant stated

that said notes were forged; that the defendant was asked what he had done with the money obtained by said forged instruments, and that he replied, "Well, it is hard to tell."

The state then called as witnesses C. J. Welland, Jonathan Jones, W. Peppard, P. M. Peck, A. D. Nikkel, J. J. Yoder, Frank Long, and Joseph J. Miller, whose names were purported to have been signed by this defendant to certain notes described in this information, and each of said witnesses testified that they did not sign the names, nor did they authorize any one else to sign their names for them; nor did they have any business transactions with said bank whereby an obligation was created in the bank's behalf as evidenced by the notes, or otherwise.

The witness M. L. Wood testified that in 1918 and 1919 he was city clerk of the city of Weatherford, Okla., and, being presented with the warrants set out in the information, was asked whether the name "M. L. Wood" on the warrants was signed by him, or whether he ever authorized the signing of his name thereto, and the witness testified said warrants did not contain his signature, and that the said M. L. Wood thereon was neither signed by him nor did he authorize any one to sign his name thereto. The exhibits of warrants show that the name of J. H. Anderson as mayor of the city of Weatherford was signed to each of said false warrants.

At the conclusion of the introduction of this testimony the defendant interposed a demurrer to the state's evidence, which demurrer was by the court overruled, and exceptions allowed. There was no testimony introduced by the defendant. A motion for a new trial was thereupon filed, considered by the court, and overruled.

The petition in error in this case recites:

(1) The court erred in overruling plaintiff in error's motion for a new trial.

(2) The court erred in overruling plaintiff in error's supplemental motion for new trial.

(3) The court erred in refusing a continuance and forcing defendant to trial in the absence of his attorney, A. J. Welch; said attorney being unable to attend court on account of his own illness.

(4) There was a total failure of evidence to support the material allegations of the information.

(5) The court erred in giving instructions Nos. 3, 4, 5, and 6.

(6) The court erred in overruling defendant's demurrer to the state's evidence and his motion to be discharged at the close of the case.

A. J. Welch, for plaintiff in error.

S. P. Freeling, Atty. Gen., and Wm. H. Zwick, Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). Defendant moved for a new trial on the ground, among others, that the court erred in overruling objection of the defendant to the introduction of any evidence by the state. Such objection was based upon the allegation that the information did not contain facts sufficient to charge the defendant with any crime. While it is urged in the brief of counsel representing the defendant that the information is insufficient, the petition in error does not contain an assignment to that effect.

This court has repeatedly held that where a defendant goes to trial and for the first time objects to the information when the state attempts to introduce testimony thereunder, or upon appeal, the objection should be overruled if by any intendment or presumption the information can be sustained. White v. State, 4 Okla. Cr. 143, 111 Pac. 1010; Edwards v. State, 5 Okla. Cr. 20, 113 Pac. 214; Ex parte Jim Spencer, 7

Okla. Cr. 113, 122 Pac. 557; McDaniel v. State, 8 Okla. Cr. 209, 127 Pac. 358; Wilsford v. State, 8 Okla. Cr. 535, 129 Pac. 80.

The information in this case charges the defendant with the crime of making a false report as to the financial condition of the Farmers' State Bank of Weatherford, as of the close of business of May 12, 1919. The statute on which this information is based reads as follows:

"Every officer, director, agent or clerk of any bank doing business under the laws of the State of Oklahoma who shall willfully and knowingly subscribe to or make any false report or any false statement or entries in the books of such bank, or knowingly subscribe to or exhibit any false writing or paper, with the intent to deceive any person as to the condition of such bank, shall be deemed guilty of a felony, and shall be punished by a fine not to exceed one thousand dollars, or by imprisonment in the penitentiary not exceeding five years, or by both such fine and imprisonment." Section 269, Rev. Laws 1910.

The foregoing statement of the case includes a substantial outline of the material allegations of the information. In the case of State v. O'Neil, 24 Idaho, 582, 135 Pac. 60, the Supreme Court of Idaho held an information substantially like the one in this case to be sufficient as against a demurrer. Such information was based upon section 7128, Rev. Codes of Idaho, the provisions of which are very similar to the statute, above quoted, upon which this information is founded.

It is the opinion of this court that the information in this case is not only sufficient to withstand an objection to the introduction of testimony thereunder, but is good as against a demurrer should one have been lodged upon the ground of insufficient facts.

It is next contended that the evidence on behalf of the state fails to support the material allegations of the informa-

tion or to prove the commission of any public offense. With this contention the court is unable to agree. No defense whatever was interposed. Reliance was placed entirely upon the failure of the state to prove its case. The evidence clearly establishes the fact that during the month of July, 1919, and for some four years prior thereto J. H. Anderson, the defendant, was the cashier and active managing officer of the Farmers' State Bank of Weatherford, Okla.; that William Umbach, the president of the bank, was a farmer living in the country some distance from the town of Weatherford; that he had no banking experience, was not actively connected with the running of the bank, and was seldom in the bank, except for the purpose of examining its notes and other papers as a director; that J. S. Wilks, also one of the bank's directors, was a farmer, with no banking experience, and had nothing to do with the active management of the bank; that the defendant had active charge of the bank with one or two subordinate employes working under him. In July, 1919, defendant admitted and confessed to the Bank Examiner that in the year 1915 he commenced to execute notes payable to the bank, purporting to be signed by farmers living in that neighborhood, that these notes would be placed in the bank's note case, and defendant admitted that it was "hard to explain" what he had done with the funds covered by these various forged notes. This system of misappropriating the bank's funds was not discovered until the month of July, 1919, when the Bank Examiner was making an examination of the notes found in the bank's note case. Defendant was present when this examination was being made, and the Bank Examiner became suspicious of two notes, one of which had apparently been raised from $700 to $1,700, and another from $400 to $1,400, and when the Examiner asked the defendant which of these amounts he was carrying on the notes defendant informed him that he was carrying the larger amount on each note. The

Bank Examiner then asked the defendant where the makers of the notes lived, and, upon being told, informed the defendant that he (the Bank Examiner) intended to interview the purported makers of the notes. It was then that the defendant admitted that these and other notes which the bank was then carrying, also certain municipal warrants, were all forgeries.

These notes and warrants were being carried as part of the assets of the bank in July, 1919, and the purported date of execution of most of the notes antedated the 12th day of May, 1919, while the due date was subsequent to the 12th day of May, 1919. The dates of the issuance of the purported warrants of the city of Weatherford were also anterior to the 12th day of May, 1919. These notes were not obtained by the Farmers' State Bank of Weatherford by a rediscount, but said bank was the payee named in each of said notes. The only reasonable deduction from said evidence, as we see it, is that said notes had been carried as part of the assets of said bank from the purported date of their execution, and were considered by the defendant and included by him in the report of the resources of said bank to the Bank Commissioner on the 12th day of May, 1919, under the item in said report, "loans and discounts on which stockholders are liable, $107,258.74." Further, it is a reasonable conclusion from the evidence that the defendant included within said report between $8,000 and $9,000 of fictitious municipal warrants of the city of Weatherford, which were found among the purported assets of the bank at the time of its examination in July, 1919. In regard to the warrants held by the bank, the report of the 12th of May, 1919, by this defendant, under the item of resources, includes as "securities with the banking board" the sum of $1,449.26. As to this particular item, at the time the examination of the bank was made in July, 1919, the defendant confessed that the warrants deposited with the banking board as security in the sum of $1,449 were forgeries. As to this

particular item the evidence is uncontradictory that it was included in the report, and the evidence is conclusive that as to that particular item the report was false. As to the evidence as to the notes being included within the report, it is circumstantial, but, in our opinion, the circumstances are such as to lead to no other conclusion than that the defendant considered and included the false and forged notes as part of the resources of the bank in making the report on the 12th day of May, 1919, as charged in the information. We deem the evidence amply sufficient to sustain the verdict and judgment.

Further, it is contended that the court erred in giving certain instructions. This assignment of error is not supported by the citation of any authority. The particular instruction complained of is not copied in the brief. The petition in error complains of the instructions Nos. 3, 4, 5, and 6. From the argument advanced we surmise that instruction No. 4 is the one contended to be prejudicial. This instruction reads as follows:

"You are instructed that every officer, director, agent or clerk of any bank doing business under the laws of the state of Oklahoma, who shall willfully, and knowingly subscribe to or make any false report, with the intent to deceive any person as to the condition of such bank, shall be deemed guilty of a felony; and shall be punished by a fine not to exceed one thousand dollars or by imprisonment in the penitentiary not to exceed five years, or by both such fine and imprisonment."

Said instruction appears to be a fair exposition of the statute upon which this prosecution was based. We fail to discover any reason why the giving of this instruction was prejudicial to the defendant, and counsel has failed to impress this court with any sound reason for holding the same erroneous.

Lastly, it is contended that the trial court erred in overruling defendant's application for a continuance. This ap-

plication was based on the ground of the absence of one of the counsel for defendant, the motion containing an allegation that said counsel was ill and unable to participate in the trial. Defendant, prior to making the application, had employed two attorneys to represent him: Mr. A. J. Welch, of Clinton, Okla., and Mr. T. W. Jones, Jr., of Weatherford, Okla. The application was presented to the trial court by the latter attorney. The allegations in the motion for a continuance were substantially as follows:

That Mr. T. W. Jones, Jr., had been employed by the defendant in an advisory capacity in the trial of the case. That he is physically unable to hear the answers of witnesses and jurors to questions asked, and unable to hear the questions and rulings of the court thereon. That A. J. Welch, of Clinton, Okla., was employed to try the case and has the entire charge of the preparation of said case for trial. That the said Welch was present in court on the day preceding the making of the affidavit and expected to be present when the case was called for trial, but was taken sick and confined to his bed on the evening preceding and is now sick and confined to his residence in Clinton, Okla., and has in attendance upon him Dr. A. J. Jeter of Clinton, Okla., whose certificate under oath as to the sickness of the said A. J. Welch is attached and made a part of the motion. That defendant, by reason of the sudden sickness of the said Welch, has been unable to employ other counsel and to give them sufficient time to make preparation for the trial. That said case is founded upon a number of instruments which will require careful examination and discussion in order to prepare for said trial. That the said Welch has prepared a defense in the case which is technical and requires study on the part of counsel trying the case and a detailed examination of the witnesses offered. That said Jones is not familiar with said

defense and is unable to present the same, even though he could hear the testimony. That the motion is not made for the purpose of delay, but in order that substantial justice may be done.

The motion was subscribed and sworn to by T. W. Jones, Jr., and attached to it was the following:

"Dr. A. J. Jeter, Clinton, Okla. This is to certify that Mr. A. J. Welch is sick with a light case of influenza and it is unsafe for him to leave the house or to be in public on account of infection. Resp. A. J. Jeter, M. D.

"Subscribed and sworn to before me this 4th day of November, 1919. V. F. Carleton, Notary Public.

"(Seal) My commission expires November 29, 1922."

When the motion came on for hearing the following proceedings were had:

"By the Court (after examination of the foregoing motion for continuance): Is there anything you want to say about this, Mr. Jones?

"By Mr. Jones: Nothing, only, as your honor knows, I can't try the case. Mr. Welch is sick and the doctor is in attendance upon him and the matter having come up at this late date Mr. Anderson couldn't get other counsel to present the matter at this time, and your honor please, Mr. Welch has had the entire charge of the case as far as the court proceedings are concerned and has prepared the case and if your honor has seen the information, there are a great number of instruments involved in this matter—it is a matter that counsel will have to study carefully in order to prepare the defense and it is a serious matter to the defendant and I think, your honor, please, he ought to be given—

"By the Court: The court has read the application and considered it, and in view of all the circumstances I think I will allow a postponement until tomorrow morning at nine o'clock, during which time the defendant may make such ar-

rangements as he sees fit—the case will go to trial tomorrow morning at ten o'clock.

"By Mr. Jones: Will the court note our exceptions to the ruling on the motion?"

On the following day when the case was again called for trial the following proceedings were had:

"By the Court: The first case on the call this morning is the case of the State of Oklahoma v. J. H. Anderson—What says the state?

"By the County Attorney: The state is ready.

"By the Court: What says the defendant?

"By Counsel for Defendant (E. L. Mitchell): I want to say that I am appearing in this case this morning for Mr. Welch, on motion—its a motion for continuance.

"By the Court: Let's see your motion, Mr. Mitchell."

Whereupon Mr. Mitchell presents to the court an application for continuance filed in this court on this date, which application, with all indorsements thereon, is as follows:

"State of Oklahoma v. J. H. Anderson. Application for Continuance.

"Comes now the defendant and makes this additional application for continuance of this cause and says:

"(1)    That he has a just and legal defense to the charge made against him in the information; that owing to the present illness of his attorney, A. J. Welch, he cannot safely go to trial of this cause at this time; that he employed said Welch to represent him in this case some two months ago, and that he employed no other attorney in the case except T. W. Jones, who was employed only in an advisory capacity; that said Jones is so nearly deaf that it is impossible for him to participate in this or any other trial, and he never attempts to conduct the trial of a case, and for this reason said Jones has

made no preparation or study of the case for trial, and is wholly unable to appear as attorney in the case.

"That said A. J. Welch is confined to his bed at home ill, unable to attend court, and a doctor's certificate has been presented and filed with the application filed herein yesterday; that said Welch had prepared the defense herein, and was ready and able, and but for his recent and present illness would have appeared in this trial and conducted the defense herein, but is wholly unable to so act by reason thereof.

"That, owing to the nature and character of the case, the information containing some 40 typewritten pages, defendant is not able, and it is impossible, to employ other counsel to take charge of his case and present his defense on so short a time, and become familiar with the case so that the same may be legally and properly conducted and his rights therein protected. Defendant says that the charges made in the complaint are untrue. Defendant says that this is the first term at which this case was called; the preliminary having been only about 15 days ago.

"Said Welch did not take sick until the day before the case was set for trial, and defendant talked with him that day, when he still hoped to be able to take charge and try the case, but went to bed under the doctor's care the evening before, and now is too ill to attend court.

"This application is not made for delay, but that he may have justice in a fair and impartial trial. Wherefore defendant moves that this cause be continued for the term.

"J. H. Anderson.

"Subscribed and sworn to this 4th day of Nov.

"R. B. Strong, Court Clerk."

"State of Oklahoma, Custer County.

"Comes now E. L. Mitchell and makes oath in due form of law, in addition to the foregoing application for continuance, and says: That he was only consulted in this case the

first time the evening of November 4th, and that he was then requested by A. J. Welch to appear in court and present this application for a continuance and do whatever he was able to do on behalf of the defendant; that owing to the nature of the case he has not even been able to or had the time to read the information or to discuss the defense of the case with the defendant, and but very briefly with the said Welch.

"That he has no information whatever as to the defense in this case, and has not been able to talk with any of the witnesses or to read any of the pleadings or consult with any person in reference thereto, except the said Welch, and was unable, on account of the illness of the said Welch, to obtain any information from him with reference to the facts or the preparation of the case.                    E. L. Mitchell.

"Subscribed and sworn to this 4th day of Nov., 1919.

"R. B. Strong, Court Clerk."

When the supplemental motion for a continuance was presented the state asked leave to make a counter showing, which was granted, and the county attorney thereupon interposed a showing to the effect that Mr. A. J. Welch, one of the attorneys for the defendant, upon whose alleged illness application for a continuance had been presented the day previous, was present at his office on that day, and had transacted business at his office by dictating a letter to his stenographer, and further, on said day had discussed certain business matters with a justice of the peace in the city of Clinton, and in addition thereto the state was permitted and did introduce Mr. R. P. Phillips, a practicing attorney at Arapaho, Okla., who testified, in substance: That on the morning the supplemental motion for a continuance had been presented, and just a short time prior thereto, Mr. A. J. Welch had called him by phone with reference to certain civil cases in which they were both interested, on opposite sides, to find out if the side represented by Mr. Phillips would be ready for trial,

and in the conversation Mr. Welch stated that he would agree to a continuance of the cause, that he had some cold, a slight attack of flu, or something like that.

It has been repeatedly held by this court, and requires the citation of no authority, that applications for a continuance are addressed to the discretion of the trial court, and that the trial court's action on such an application will not be disturbed unless a manifest abuse of discretion appears. Absence of counsel is not made one of the statutory grounds for a continuance. Section 5045, Rev. Laws 1910.

If, however, the trial court's action in overruling an application on this ground resulted in depriving the defendant of the benefit of counsel, or even if it appeared from the record that the defendant had a substantial defense to the charge which he was unable to present by reason of the absence of counsel, this court would unhesitatingly set aside a conviction for failure to grant a reasonable continuance.

In this case, however, it appears that defendant had employed two counsel, one of whom was present in court and presented the application. In the application presented by him he asks that a continuance be granted in order that the other counsel may present a technical defense. What this defense is is not stated, and in view of the confession made by the defendant in this case the court is at a loss to surmise that defendant had a defense other than that which was afterwards presented to the jury and urged in this court, to wit, the failure of the state to make out its case.

While this court has always regarded favorably the right of a defendant to be heard and present a substantial defense to any criminal charge lodged against him, we have never been impressed with the necessity of delaying a criminal prosecution merely for the purpose of affording an opportunity to

present only technicalities not directed to the substantial merits of the prosecution.

The record in this case shows conclusively that the defendant was the only person who had any knowledge of the falsity of the state's case, if it were false, and he certainly had time to explain his apparent criminal conduct as made out by the state's case, if such an explanation could have been made consistent with his innocence. This he did not do, nor does he pretend in any of the motions presented, nor, if a new trial should be granted him, that either he or any other witness will be able to make an explanation of his conduct which would in any degree raise a reasonable doubt of his guilt.

It appears conclusively from the foregoing excerpts of the record that the trial court granted a continuance for one day in order to permit him to make arrangements for other counsel if he desired to do so, and it further appears that thereafter he was represented by another very able counsel who conducted his trial, cross-examined the state's witnesses, and saved numerous exceptions to the court's rulings throughout the trial.

In Payne v. State, 10 Okla. Cr. 314, 136 Pac. 201, it is held:

"An application for a continuance, for the term, on the ground of the absence of leading counsel, is properly denied, where the defendant is duly represented by his other counsel."

In the body of the opinion it is said:

"To reverse the case on the ground here set up with reference to the absence of counsel would be to place it within the power of counsel to control the running of the courts and the disposition of cases."

See, also: Vance v. Territory, 3 Okla. Cr. 208, 105 Pac. 307; Snyder Co-op. Ass'n v. Brown et al., 70 Okla. 13, 172 Pac. 789.

We think it evident that there was no manifest abuse of discretion in overruling the motion and application for a continuance in this case. Further, there is no reason to believe that upon a second trial an intelligent and honest jury would arrive at any other verdict than that of the guilt of the accused. It appearing from the motion for a continuance that the application was made solely for the purpose of permitting the defendant to present a defense entirely technical in its nature, we think it would be a travesty on justice to set aside an apparently righteous judgment for such a reason. The willful and unlawful spoliation of the funds of a bank by its officers is more dangerous to the depositor and to the public generally (in that it destroys confidence in the entire banking system, both federal and state, and strikes a blow at the very foundations upon which the business of the country is based) than is the action of a highwayman who takes the funds of the bank at the point of a gun. The law should be enforced against one in the same measure and with the same certainty that it is enforced against the other.

The judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.