# . A. J. WALDOCK v. STATE.

No. A-6736. Opinion Filed April 13, 1929.
(276 Pac. 509.)

Williams & Fortner, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was convicted in the district court of McCurtain county on a charge of embezzlement, and sentenced to imprisonment in the state penitentiary for a period of five years. Motion for new trial was filed, overruled, exceptions saved, and the case is here on appeal.

The testimony on behalf of the state is in substance as follows: R. C. Oldham testified that in 1924 he was one of the county commissioners of McCurtain county, and was chairman of the board of commissioners; that during the year 1924 a number of judgments and warrants outstanding against McCurtain county was refunded. McCurtain county owned some of these judgments; "I could not say as to the warrants."

Mayo James testified, in substance, that he was county treasurer, and, as county treasurer, he owned some of the judgments that were refunded; in the funding bond issue there was $9,948.30 that had not been paid on August 27, 1926, and are unpaid at this time.

John C. Campbell testified that he was connected with the Tradesmen National Bank of Oklahoma City, Okla., and was its cashier; that his bank handled the funding bonds of 1924 of McCurtain county; that he delivered the bond to George W. Piersol, of the Piersol Bonding Company, and

received payment from them at the time, and his bank sent the amount of the proceeds from the principal amounting to $66,000 to Mr. A. J. Waldock, the interest they sent to Mayo James, county treasurer.

The state then introduced a cashier's check for the $66,000, indorsed by A. J. Waldock, trustee judgment creditors. Mr. Campbell further testified that the cashier's check was for the proceeds of the funding bonds issued in 1924. A receipt from A. J. Waldock to the Tradesmen National Bank for the $66,000 was introduced in evidence showing that Waldock received that amount.

D. B. Strawn testified, in substance, that he was connected with the State National Bank as its president; that he remembered the occasion of Mr. Waldock receiving a check from the Tradesmen National Bank for $66,000; that the check was deposited in his bank as A. J. Waldock, trustee; "Mr. Waldock explained to me what it was for, saying it was the proceeds of funding bonds." The witness then produced a deposit slip showing a deposit of $66,000 to the credit of A. J. Waldock, trustee judgment creditors.

Mayo James was recalled, and stated that, after the funding bonds were issued and sold in the latter part of 1924, or the early part of 1925, A. J. Waldock paid on the outstanding warrant $54,034.53; "he paid along at different times when we called him on his warrants"; would pay by check on the State National Bank of Idabel.

Edgar Dooley, called as a witness for the state, testified, in substance, that on June 26, 1925, A. J. Waldock had a personal account with his bank; he was vice president of the State National Bank; that on June 26, 1925, Mr. Waldock drew a check on his trust account for $11,219.16, which exhausted the balance in the trust account, and on the same day he deposited the same amount in his personal account; witness identified the original deposit slip for

$11,219.16 deposited to the individual account of A. J. Waldock; witness further stated Mr. A. J. Waldock had a personal account in his bank in 1925 up until September 4, 1925. Witness further stated that the amount deposited by A. J. Waldock was withdrawn by him by means of checks given on different dates running in amounts from one to five thousand dollars, as disclosed by his ledger sheets.

J. R. McClelland, a witness for the state, testified his home was in Oklahoma City; he was in the automobile business in the year 1925; he sold some automobiles to A. J. Waldock on or about the 12th of September, 1925; he received payment for the cars of $1,024.10, and on or about October 1, 1925, he sold him cars, and received in payment the sum of $4,912.68. Later on, on December 2, he sold him four automobiles, and $5,529.62 was paid in five checks aggregating that amount of money.

John Dewitt testified for the state, in substance, that he was vice president of the Idabel National Bank; they kept a cashier's check record in their bank; the records show who purchased the checks and to whom the check is made payable; that A. J. Waldock purchased a cashier's check for $4,512.68, made payable to the American National Bank of Oklahoma City, Okla.

All the testimony tends to show that the defendant, A. J. Waldock, received the full amount of this bond issue of $66,000, and deposited it in an account as a trustee's fund, and carried it in the bank as such until he paid out the amount of $5,528.68, and later he transferred the amount of $11,219.16 to his individual account, and then paid the money out for his individual business, and did not pay to the county of McCurtain the amount due it on the judgments; that he was handling the funds as trustee for the purpose of settling with the judgment creditors and the outstanding warrants; and that he appropriated to his

own use $9,948.30, and did not apply the amount to the judgments of the county when demand was made.

Defendant has assigned nine errors alleged to have been committed in the trial of the case. They will be considered as they are argued and presented in the defendant's brief. It is first urged by the defendant that the district court of McCurtain county was without jurisdiction to try the defendant on the charge against him. The defendant was informed against and tried under section 2124, C. O. S. 1921, which is as follows:

"If any person being a trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator or collector, or being otherwise entrusted with or having in his control property for the use of any other person, or for any public or benevolent purpose, fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement."

It is urged by the defendant that section 2124, C. O. S. 1921, was not applicable, and that the district court had no jurisdiction to try this case; defendant contending he should have been prosecuted, and, if convicted, sentenced, under section 4278, C. O. S. 1921, which statute is as follows:

"Any person who shall appropriate or use, or aid or abet in appropriating or using, any of the funds or moneys mentioned in this article, for any other purpose than as in this article provided, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in the sum equal to the amount of money so appropriated or used, and imprisoned in the county jail for not less than three nor more than twelve months, and shall also be liable in a civil action for the amount so misappropriated or used, to be prosecuted by any such bond holder or other party entitled thereto."

Section 2121, C. O. S. 1921, in defining embezzlement, says:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted."

Section 2132 defines the punishment for embezzlement as follows:

"Any person guilty of embezzlement is punishable in the manner prescribed for feloniously stealing property of the value of that embezzlement. And where the property embezzled is an evidence of debt or right in action, the sum due upon it, or secured to be paid by it, shall be taken as its (face) value."

It is urged by the defendant that, because of the fact that the funds alleged to have been embezzled by him are funds derived from the sale of funding bonds by the county, section 4278, C. O. S. 1921, should control the jurisdiction of the court, and fix the penalty of imprisonment, in the event he should be convicted of the offense charged against him. This section, after stating that any one who shall appropriate or use, or aid or abet in appropriating or using, any of the funds or moneys mentioned in this article, for any other purpose than as in this article provided, shall be guilty of a misdemeanor, and fixing his punishment to be imprisonment in the county jail for not less than three nor more than twelve months, and a fine of a sum equal to the money so appropriated.

Article 4, c. 25, C. O. S. 1921, does not provide for a trustee for judgment creditors, and it does not provide for the disbursement of any funds that might come into the hands of a trustee or agent for judgment creditors. It might be necessary and practical in certain cases for the judgment creditors to have an agent or trustee, but the statute leaves this to the creditors.

When funding bonds are issued, the statute contemplates that the new bonds will be delivered to the judgment creditors in return for the old evidence of indebtedness, be it judgments against the county or warrants. The money or funds from the proceeds from the sale of the funding

bonds in the hands of judgment creditors or their trustees or agents are not referred to in any of the provisions of article 4, c. 25, C. O. S. 1921. We hold that the Legislature did not mean to include in the provisions of section 4278, C. O. S. 1921, the proceeds from the sale of funding bonds in the hands of judgment creditors, trustees, or agents, when it used the term "any of the funds or moneys mentioned in this article." The first section of the article authorizes municipalities to fund their outstanding indebtedness, provides for the transfer after issuing, and the amounts that may be issued, and provides for the attestation of the bonds when issued; then provides as to the levy of the tax to create a sinking fund for the purpose of paying the interest coupons and retiring the bonds. We hold that the terms used in section 4278, supra, "any person who shall appropriate or use, or aid or abet in appropriating or using, any of the funds or moneys mentioned in this article," refer to the funds and moneys appropriated and collected for the purpose of paying the funding bonds, that is to say, if the county treasurer of McCurtain county should use the specific funds collected for the funding bonds of 1924 for the redemption of any other bonds, or if the county treasurer had invested the sinking fund in any manner other than in the purchase of United States bonds or bonds of the state of Oklahoma, then section 4278 would be applicable.

The defendant argued at length that section 4278 is the one under which he should be charged, and, if convicted, sentenced, and the defendant urges that this court in State v. Bunch, 23 Okla. Cr. 388, 214 P. 1093, sustains his contention; citing Hays v. State, 22 Okla. Cr. 99, 210 P. 728; Warner v. Mathews, 11 Okla. Cr. 122, 143 P. 516.

A careful examination of the cases cited discloses that in each of these cases it was the clerk of the court that was charged with the misappropriation of funds coming into his hand as such clerk, and the provision in the statute

upon fees and salaries was held to be applicable in such cases, and not the general statute upon the question of embezzlement. The point involved in this case is not similar to the point in the cases cited; in this instance the party had received the funds for the purpose of disbursing them and releasing the county of its indebtedness, and the general statute upon embezzlement is applicable. The contention of the defendant that the court was without jurisdiction was properly overruled.

It is next urged by the defendant that the court erred in overruling his motion for continuance, which was predicated upon the absence of John H. Shirk, an attorney of Oklahoma City, who had appeared in the case, and was employed by the defendant to assist in representing him. This question has been before this court many times, and the court has held that a motion for continuance was addressed to the sound discretion of the court, and, unless that discretion has been abused, this court would not reverse a case upon that ground.

In Anderson v. State, 21 Okla. Cr. 194, 207 P. 977, in the sixth paragraph of the syllabus, this court said:

"Absence of counsel is not made one of the statutory grounds for a continuance. If, however, the trial court's action in overruling an application based on this ground resulted in depriving defendant of the benefit of counsel, or even if it appeared from the record that defendant had a substantial defense to the charge which he was unable to present by reason of absence of counsel, this court would unhesitatingly set aside a conviction" on the ground of "failure to grant a reasonable continuance."

In this case the defendant offered no testimony, and there is no showing that by reason of the denial of the court of his motion for continuance he was prevented from presenting a proper defense. The record in this case shows conclusively that the defendant was the only person who had knowledge of the facts and charge against him, and

he certainly had time to explain his conduct as made out by the state's case, if such an explanation could have been consistent with his innocence. This he did not do, nor does he pretend in any of the motions presented that either he or any other witness would be able to make an explanation of his conduct which would in any way raise a reasonable doubt as to his guilt. The defendant was not only represented by counsel, but by able counsel, and from an examination of the record his rights during the trial were properly protected by his counsel. The action of the trial court in overruling the motion for continuance was not an abuse of discretion, and the motion for continuance was properly overruled.

It is next urged by the defendant that the information is insufficient to charge him with the crime of embezzlement. When the state offered testimony, the defendant objected to the offer, for the reason that the said information does not state facts sufficient to constitute a public offense; that the facts stated in the information are not sufficient to constitute the crime of embezzlement; that the information fails to show that Waldock was trustee for McCurtain county; the information fails to allege a demand for this money. The information fails to show that McCurtain county was entitled to the money alleged to have been embezzled. These objections were overruled, and defendant reserved an exception, and now urges that the information was insufficient to sustain a conviction. It is not denied by the defendant that he received the money, nor did he offer testimony to show that he did not receive the money as trustee for McCurtain county for the purpose of liquidating certain indebtedness against the county.

This court, in the case of Ellington v. State, 7 Okla. Cr. 252, 123 P. 186, held that, where a guardian received and was intrusted with, or had in his possession and control, certain sum of money as the property of, or belonging to his ward he had willfully, unlawfully, feloniously, and

fraudulently, not in due and lawful execution of his said trust, embezzled and appropriated to his own use said money, is fully proven by the evidence, and is not denied by the appellant, but that the ownership was sufficiently alleged as against the embezzler, because he obtained possession of it as property of his ward; the court saying:

"If he was agent enough to collect this money, he was agent enough to be punished for its embezzlement as against him. Whatever the rights of others might be, his ward was the owner of this money. He will therefore not be permitted to say in his defense that it was not her property. Even in civil suits, a tenant cannot dispute the title of his landlord. It is no defense in embezzlement to contend that the property was unlawfully acquired by or for the principal."

The record discloses in this case that the only person that asked the defendant to act in the capacity of trustee was R. C. Oldham, chairman of the board of trustees of McCurtain county—Mr. Oldham, who stated that he told the defendant they would have to have a trustee and asked him if he would not serve in that capacity. It is not denied that the defendant assumed to act as trustee or agent and that the funds belonged to McCurtain county; that he failed to pay the same over when requested; and that he converted the same to his own use. The information properly stated a cause of action against the defendant, and the court did not err in overruling the objections of defendant to the introduction of testimony by the state in support of the allegations in the information.

It is next urged by the defendant that instructions 4 and 5, as given by the court, incorrectly stated the law as applicable to the case. After a careful reading and study of the two instructions complained of by the defendant, we hold they fairly stated the law as applicable to the facts in this case, and that the court did not err in refusing to give instructions Nos. 1, 2, 3, and 4, requested by the defendant. To set out these instructions in full in this opinion would

extend it to a greater length than we deem necessary under the facts in the case. The court in his general instructions fairly declared the law applicable to this case, and it was not error for the court to refuse the instructions requested by the defendant. Some question is raised as to right of the county treasurer to buy judgments against the county to be paid out of the funding bond fund. It is shown that the defendant received the money for the purpose of paying off the indebtedness of the county, and the defendant is not in a position to question the right of the county to purchase judgments against it. The verdict is in proper form, and the court did not err in receiving the same. After a careful examination of the entire record, we hold that the defendant was accorded a fair and impartial trial; that the court did not commit a reversible error in the trial of the case; that the evidence is sufficient to sustain the judgment.

The case is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.