Joy GIBSON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12542.

Criminal Court of Appeals of Oklahoma.

July 30, 1958.

Hendon & Hendon, Shawnee, Claude Hendon, Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Robert A. Wilson, County Atty., Pottawatomie County, Shawnee, for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, Joy Gibson, defendant below, was charged by information in the District Court of Pottawatomie County, Oklahoma, with the crime of embezzlement of the sum of $5,113.27 from a labor union local No. 744 I. U. E.–C. I. O., she being the President of said local. She was tried by a jury, but the jury being unable to agree on the punishment, left the same to the trial court. The court assessed her punishment at one year in the state penitentiary and entered judgment and sentence accordingly, from which this appeal has been perfected.

The Attorney General has informed this Court he cannot sustain this conviction. He did not confess error, but referred the matter to the County Attorney of Pottawatomie County, from whom he has had no response. Under these conditions, it must be presumed the defendant's contentions are meritorious.

The facts upon which this prosecution was predicated are as follow. The defendant was President of union local No. 744 I. U. E.–C. I. O. in Shawnee, Oklahoma, from January 13, 1954, to February 9, 1956. During a portion of said period of time, one Sue Ann Mize was the Financial Secretary-Treasurer of said local. The Constitution and by-laws of said union setting forth the duties of the President are, to preside over all regular and special meetings of the local and the executive board, preserve order, and enforce the Constitu-

ition and by-laws of the union, to be an ex officio member of all committees, appoint certain committees, and sign checks jointly with the Financial Secretary-Treasurer. It is pertinent to note that at no place in the said Constitution and by-laws is the President of the union directed to receive and account for any moneys paid to the union. The record fails to disclose that at any time the President of the local acted in such capacity. To the contrary, the duties of receiving and accounting for the moneys paid to the local are described in the Constitution and by-laws as the responsibility of the Financial Secretary-Treasurer. The defendant, as President of the local, without authority, removed the check book of the union local from the desk in the union hall and kept it during the period herein involved. During said time, she wrote and cashed checks on the union account which bore her signature and the purported signature of the Financial Secretary-Treasurer, Sue Ann Mize. Sue Ann Mize testified the signatures on the twenty-six checks drawn on the union account in amounts ranging from $30 to $95 did not bear her signature. In order to keep the abstractions from becoming known, the defendant from time to time picked up the bank statements and would agree to bring them and the check book to the next meeting of the local, which she did not do. Some of the checks were labelled as loans of money borrowed from the union's funds by the defendant, but no such loans were authorized. This method of operation continued by these separate defalcations as charged in the information until a total sum of $5,113.27 was abstracted.

■ It is obvious why the Attorney General and the County Attorney have not been able to sustain this conviction as laid in the information under the provisions of 21 O.S.1951 § 1452. This section provides:

"If any person, being an officer, director, trustee, clerk, servant or agent of any association, society or corporation, public or private, fraudulently appropriates to any use or purpose not in the due and lawful execution of his trust, any property *which he has in his possession or under his control by virtue of his trust,* or secretes it with a fraudulent intent to appropriate it to such use or purpose, he is guilty of embezzlement." (Emphasis supplied.)

It clearly appears that the violation of a trust is the gravamen of the offense as defined in said statute.

■ The charging portion of the information reads as follows: "Joy Gibson * * * did * * * feloniously commit the crime of embezzlement in that the said Joy Gibson was during the period from January 13th, 1954, through February 9th, 1956, an officer of a certain private association and society, namely Local 744 IUE-CIO, a labor union, holding the office of President of said Union, and that the said Joy Gibson did, during said period of time, wilfully, intentionally, wrongfully, knowingly, fraudulently and feloniously appropriate to and for her own use and benefit certain property which she, the said Joy Gibson, did have in her possession and under her control, and with which she had been entrusted by virtue of her trust, namely $5,113.27 in good and lawful money of the United States of America, and not the property of the said Joy Gibson, and that said money was appropriated for a use and purpose not in the due and lawful execution of the trust of the said Joy Gibson, with the unlawful intent and purpose on the part of the said Joy Gibson to fraudulently appropriate said money and property to her own use and benefit and to deprive the said union thereof permanently." The defendant made timely attack on the information.

■ The foregoing statute needs little explanation. It is clear and unambiguous. It is clear that to bring one within its provisions certain essential allegations must be made. First, that the accused occupies an official position or is an agent of the association. *Second, that he must have received or have in his possession or control by virtue of a trust relation property of the association.* Third, while holding said prop-

erty in a trust relationship, he must appropriate it to his own use or purpose and thereby betray his trust. In short, to be within the foregoing statute, the accused must occupy a fiduciary relationship entrusting him with the possession of the property. The information must plead facts showing the fiduciary relationship creating the trust and the breach thereof. It is not sufficient to plead conclusions, such as was done in the case at bar, such as, " * * * with which she had been entrusted by virtue of her trust, * * *." It is essential that the information plead facts to bring the crime within the substantial language of the statute. To sustain the information herein, it is necessary to assume or infer merely because the accused was President of the union local, she was under official duty to receive and safely keep union funds actually entrusted to another. Such assumption would be contrary to the provisions of the Constitution and by-laws of the union local, in which the Financial Secretary-Treasurer is specifically charged with such duties. Hence, the necessity for pleading facts establishing the fiduciary relationship. 29 C.J.S. Embezzlement § 33, n. 42, p. 715; 20 C.J. 469, Sec. 66, n. 37. The information herein completely fails so to do except by conclusions. It has been held:

> "All that is necessary is that the essential facts constituting the material elements of the offense be set forth."

29 C.J.S. Embezzlement § 27(a), n. 47, p. 705; Waldock v. State, 42 Okl.Cr. 331, 276 P. 509. In Abrams v. State, 13 Okl.Cr. 11, 161 P. 331, 332, in syllabus 4 it was held:

> "Where words or terms used in the statute have no technical or precise meaning which of themselves imply or define the offense, then the indictment or information must set forth the particular things or acts charged to have been done with reasonable certainty and distinctness."

The information herein does not meet the requirements of bare essentials required by law in pleading embezzlement.

There is a second and equally insurmountable obstacle confronting the Attorney General in this prosecution. The information charges embezzlement, but the evidence fails to establish the charge. It would, however, be sufficient to sustain a charge of larceny by fraud or forgery. Herein, the defendant acquired the check book without direction or right so to do with the then conceived intent of using the same for the fraudulent and unlawful purpose of abstracting money by forging the signature of Sue Ann Mize thereto and affixing her own valid signature thereto as a shield against detection of her fraudulent abstractions. Hence, it is clearly apparent that the union funds were not acquired and held by the President of the union local in any trust capacity as defined by the aforesaid statute, but were acquired by fraud and forgery for the purpose of an unlawful conversion and could not constitute embezzlement. By way of a passing observation, so far as the defendant is concerned, there could be no embezzlement except in concert with the Financial Secretary-Treasurer, since the President was not in possession of the funds but instead, said funds were held by the Financial Secretary-Treasurer. The co-signature of the President on the checks was obviously a buttress against embezzlement by one officer acting alone. Of course, the defendant's signed confession that she alone was responsible for the abstractions from the union funds removes the case from this realm of speculation. Instead of the President being a check, she became a cheat. The facts herein adduced therefore establish either the crime of larceny by fraud or forgery and not a case of embezzlement, and hence, there is a fatal variance in the pleading and the proof.

These conclusions are supported by the distinction made in Riley v. State, 64 Okl.Cr. 183, 78 P.2d 712, 713, wherein the Court said in syllabus 6:

> "When larceny is committed by fraud, or whether it is embezzled is determined with reference to the time

when the fraudulent intent to convert the propery to the taker's own use. In larceny, the criminal intent must exist at the time of the taking of the property, and it must be taken with an intent to deprive another thereof."

See also Bivens v. State, 6 Okl.Cr. 521, 120 P. 1033, syllabus 2:

"The distinction between larceny where the taking is by fraud, and embezzlement is determined with reference to the time when the fraudulent intent to convert the property to the taker's own use occurs. In larceny, the criminal intent must exist at the time of taking the property, and it must be taken with intent to deprive another thereof. If, on the other hand, the taker receives the property as a bailment, intending at the time a compliance with the terms of the bailment, or to conform to the owner's wishes concerning the property, and he afterwards fraudulently appropriates the property to his own use, intending to deprive the owner thereof, the crime is embezzlement."

In light of the facts as revealed by the record herein, the state was not necessarily limited to a charge of larceny by fraud, but might well have prosecuted this defendant for the crime of forgery. The failure of the County Attorney to properly analyze his facts in light of the appropriate statutes is clearly apparent. On no other basis than larceny by fraud or forgery should this prosecution have been instituted.

For all of the above and foregoing reasons, the judgment and sentence herein is reversed and the cause is remanded for a new trial.

POWELL and NIX, JJ., concur.