The State v. Townsend.

judgments should be modified in this respect, but the majority think otherwise, and they will accordingly be

AFFIRMED.

THE STATE v. TOWNSEND.

1. **Murder in the First Degree:** KILLING MUST BE WILLFUL: SUFFICIENCY OF INDICTMENT. To constitute murder in the first degree, where it is not committed in the perpetration, or attempt to perpetrate, arson, rape, robbery, mayhem or burglary, the killing must not only be deliberate and premeditated, but willful. (Code, § 3849.) But it is not necessary to charge the crime in the precise language of the statute; and to say in the indictment that the homicide was committed "with a specific intent to kill and murder" was, in this case, equivalent to alleging that it was willful.

2. **Criminal Law:** FORCE OF EXPERT TESTIMONY: INSTRUCTION DISAPPROVED. While there are cases in which it is true that expert testimony is the lowest order of evidence, and of little weight as against the credible testimony of witnesses who testify to facts within their own observation, yet an instruction to that effect cannot be sustained in this case, where the defendant was on trial for murder, and the question was as to his sanity at the particular time when the act was committed, and there was evidence tending to show that he had from childhood been afflicted with a form of epilepsy well known to the medical profession, but whose symptoms are not very noticeable, and whose results upon the sanity of the patient are not well understood, by the non-professional observer.

ROTHROCK, J., *dissenting.*

3. **Murder:** PRESUMPTION OF MALICE FROM USE OF DEADLY WEAPON: INSTRUCTION DISAPPROVED. It is error to instruct in a murder case that malice is *proved* by the selection and use of a deadly weapon, in a deadly manner, without legal excuse. Such facts do not *prove* malice, but only raise a presumption of it, which may be rebutted.

4. **Practice:** EVIDENCE: BIAS OF WITNESS: HOW SHOWN. In showing the bias of a witness, the party against whom he has testified is limited to a cross-examination of the witness, and cannot contradict what he says on such cross-examination by the testimony of another witness.

*Appeal from Decatur District Court.*

THURSDAY, SEPTEMBER 24.

THE defendant was convicted of murder in the first degree, and sentenced to confinement in the penitentiary for life. He appeals to this court.

*M. L. Temple* and *Mitchell & Penick*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

ADAMS, J.—I. The defendant moved in arrest of judgment on the alleged ground that the indictment does not

1. MURDER in the first degree : killing must be willful : sufficiency of indictment.

charge murder in the first degree. The indictment charges that "Leroy Townsend, on the twenty-eighth day of June, 1883,  *  *  *  in and upon one E. P. Ware, unlawfully, feloniously, deliberately, premeditatedly and of malice aforethought, did commit an assault with a deadly weapon   * * * then and there held in the hands of said Leroy Townsend, and then and there the said Leroy Townsend did, with specific intent to kill and murder him, the said E. P. Ware, unlawfully, feloniously, premeditatedly, deliberately and of malice aforethought, strike said E. P. Ware with said deadly weapon   *  *  *  upon the head of him, the said E. P. Ware, a mortal blow,   *  *  *  inflicting upon the head of said E. P. Ware a mortal wound, of which said wound he, the said E. P. Ware, then and there died," etc. • To constitute murder in the first degree, where it is not committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, mayhem or burglary, the killing must not only be deliberate and premeditated, but willful. Code, § 3849.

In the indictment in question the word "willful" is not used. It is insisted, therefore, that the crime charged is not murder in the first degree. But it is charged that the act was committed "with a specific intent to kill and murder." A willful killing is simply an intended killing, and nothing could make the killing willful except the intended result of

the defendant's act.　It is not necessary to charge in the precise language of the statute.　It is sufficient if the words used are fully equivalent, and we have to say that we think that the words used in this case are.　The indictment, then, in our opinion, is not subject to the objection urged.

II.　The court gave an instruction in these words:　"A number of witnesses have been called and have testified as medical experts;—that is, they have given you their opinion based upon hypothetical questions put to them.　You will carefully consider this testimony, and give it the weight you may think it justly entitled to, taking into consideration the amount of skill or learning possessed by such experts; also their candor, or want of candor, upon the witness stand, or the interest manifested by them, if any, in the event of the suit.　But, while it is proper for you to consider this class of evidence, and give it such weight as you may think it justly entitled to, still it is proper to say that under the law it is regarded as the lowest order of evidence, or evidence of the most unsatisfactory character.　It cannot be claimed that it ought to overthrow positive and direct evidence of credible witnesses who testify from personal knowledge, but it is important as corroborative when there is a conflict between the witnesses."

*2. CRIMINAL law: force of expert testimony: instruction disapproved.*

The giving of this instruction is assigned as error.　The killing in this case was conceded.　The principal question presented to the jury was as to whether the defendant was in such mental condition as to be responsible for his act.　The homicide was a very peculiar one.　The person killed was an entire stranger to the defendant, and the homicide appears to have been committed without any reasonable ground of provocation.　The only ground shown was a remark made by the deceased to some idle boys; but which was overheard by the defendant's stepmother, and was of such a character that the defendant claimed that it was an insult to his stepmother.

The deceased was a street peddler.　On the evening of the

twenty-eighth of June, 1883, he was in the town of Murray, selling soap and liniment. He had erected some boxes, and was standing upon one of them with his wares before him. While thus engaged he stopped a moment to erect a lantern. Not succeeding readily, some of the boys around him jeered him. He replied by saying: "Patience and sweet oil will conquer anything but a cat." At the time the remark was made, a crowd had collected of from fifty to one hundred persons. The defendant and his stepmother were sitting at a little distance from the crowd in a buggy. After hearing the remark above set out they started off and drove home, a distance of about 600 feet. The defendant on the way made one or two obscure threats against the peddler, and was in a state of excitement and trembling, and Mrs. Townsend became alarmed. On reaching home he went into the house and started immediately to leave it. Mrs. Townsend asked him if he had a revolver with him. He said he had. She asked him to give it to her, and he complied with her request. He then jumped into the buggy and drove rapidly back towards town, and Mrs. Townsend followed him rapidly on foot. He deflected a little and stopped at a lumber office and procured a ball club. After driving a short distance further, he hitched his horse and proceeded with his club towards the peddler. He entered the crowd, went up behind the peddler and struck him on the head with the club and killed him. All this transpired in the space of a few minutes. Before Mrs. Townsend could reach the crowd the homicide had been committed, and the defendant was under arrest. He had been regarded as a young man of good character and amiable disposition, and had not before that time been regarded as insane; but there was evidence tending strongly to show that he had from childhood been afflicted with a form of epilepsy well known to the medical profession. The disease in that form, it appears, is obscure. The symptoms are not very noticeable by the non-professional mind, and when noticed their significance is not usually well understood.

Yet it is shown that this form of epilepsy often produces momentary irresponsibility, and that at such time there is occasionally a homicidal tendency. The medical evidence in the case was exceedingly full. Some of the witnesses were shown to be men of great learning and experience. Their testimony in the main was favorable to the defendant. The state relied largely upon the testimony of the defendant's associates, who had no knowledge of the epileptic symptoms testified to by others, and who had observed nothing abnormal in the defendant's mental condition. The court, in the instruction above set out, must, we think, have regarded their testimony as the direct and positive evidence in the case, and as not to be overthrown, if the witnesses were credible, by expert evidence. This, it may be conceded, was correct so far as the defendant's general observable mental condition was concerned.

But the ultimate fact for the jury to determine was the defendant's mental condition at the time of the homicide. As touching the question as to whether the defendant was afflicted with a certain form of epilepsy, and as to the characteristics of that particular form of epilepsy as producing short periods of insanity and a homicidal tendency, the medical evidence was important. In view of the peculiar character of the case, we do not think that the medical evidence should be regarded as the lowest order of evidence, as the court held. There are cases, undoubtedly, in which this might be said of expert evidence. Take a case involving the question of the genuineness of a signature; expert evidence would be of a low grade as compared with the testimony of credible witnesses who testify to having seen the signature written. There are many cases of a similar kind. But there are other cases, and the case before us is one of them, which do not, we think, call for a disparagement of expert evidence. There were questions touching the matter of epilepsy which could be answered properly only by an expert; and the fact of epilepsy, if established, had such an important bear-

ing upon the question as to the defendant's mental condition at the time of the homicide, we think, that the attempt to grade the evidence was calculated to mislead the jury, and that the instruction cannot be sustained.

III. The court instructed the jury that malice "is proved by the selection and use of a deadly weapon, in a deadly manner, without legal excuse." The giving of this instruction is assigned as error. The court probably meant that the selection and use of a deadly weapon, in a deadly manner, without legal excuse, is evidence of malice. But the evidence is not conclusive. It merely raises a presumption, and the presumption may be rebutted. It is hardly proper, then, to say that malice is *proved* by such evidence. Whatever is proved in a case may be regarded as established. In using the word "proved" as expressive of the result of such evidence, we think that the court erred.

*3. MURDER: presumption of malice from use of deadly weapon: instruction disapproved.*

IV. One Haskins testified to facts tending to show that the defendant was not a person of sound mind. The state sought to impair his credibility by showing that he testified under a bais in favor of the defendant. The counsel for the state accordingly asked him if he did not, at a certain time and place, state to one Johnson that the defendant did just right in striking the deceased. The witness denied that he so stated. Johnson was then called, and, against the defendant's objection, was allowed to testify that Haskins made such statement. In allowing Johnson's testimony, we think that the court erred. The effect of Johnson's testimony was not to contradict anything which Haskins had testified to in his examination in chief, nor did Haskins' statement to Johnson tend to show that the defendant was guilty. It did, perhaps, tend to show that Haskins was biased; but, in showing the bias of a witness, the party against whom he has testified is limited to a cross-examination of the witness. If Johnson could be called

*4. PRACTICE: evidence: bias of witness: how shown.*

to prove Haskins' bias, another witness might be called to prove Johnson's bias, and so on indefinitely.

We think that the judgment of the district court must be reversed, and the case remanded for another trial.

REVERSED.

ROTHROCK, J., *dissenting.*—I cannot agree to the second point in the opinion.