## OSCAR J. PAYNE v. STATE.

No. A-1636.   Opinion Filed November 22, 1913.

(136 Pac. 201.)

1. **CONTINUANCE—Grounds.** An application for continuance, for the term, on the ground of the absence of leading counsel, is properly denied, where the defendant is duly represented by his other counsel.

2. **SAME.** The refusal of a continuance on the ground of absent witnesses held error, on account of the peculiar circumstances of this case.

3. **TRIAL—Severance—Discretion of Court.** As to whether or not the state shall ask for a severance is a matter entirely within the discretion of the county attorney; and, when asked for by the state, is addressed to the discretion of the court, but the court cannot on its own initiative order a severance.

4. **EVIDENCE — Declaration of Codefendant—Admissibility.** The declarations of a codefendant made in the absence of the defendant, to be admissible, must be so connected with the offense charged as to constitute a part of the res gestae.

5. **WITNESSES—Cross-Examination of Accused—Collateral Matters.** It is error to permit the defendant as a witness in his own behalf to be examined as to any distinct collateral fact not brought out in the examination in chief, with the view of impeaching his testimony by introducing other witnesses to contradict him.

6. **SAME—Conclusiveness of Testimony.** When a witness is cross-examined on a matter collateral to the issue, his answer is conclusive, and cannot be subsequently contradicted by way of impeachment by the party putting the question.

*Appeal from District Court, Carter County;*
*S. H. Russell, Judge.*

Oscar J. Payne was convicted of assault with intent to kill, and appeals.   Reversed.

*W. I. Cruce, A. C. Cruce,* and *J. C. Thompson,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J. The information ·in this case, after alleging time and place, charges:

"They, the said Oscar J. Payne, Edgar M. Payne and Floyd M. Tindle, did then and there unlawfully, feloniously, intentionally and wrongfully shoot one Will Wyent with a certain firearm, to wit, a pistol, with the unlawful and felonious intent then and there thereby to kill and murder him, the said Will Wyent, contrary," etc.

Upon a separate trial plaintiff in error was found guilty of assault with intent to kill, and his punishment assessed at imprisonment in the penitentiary for a period of five years.

The evidence shows that all the parties resided in the Deese community, northwest of Ardmore, and on the night of the date alleged in the information attended a religious meeting held under an arbor, near the store there. It would seem that there was an agreement or understanding between the Chaney brothers and others to have John Chaney take Alonzo Payne's girl away from him and escort her home, and these parties were all waiting and watching to see what would happen.

Will Wyent testified: That, on his way to attend the services, he met Oscar and Edgar Payne and Lona Sims and walked on with them; that he sat in a hack near the arbor with Ovey Alexander, Vick Culpepper, and Avery Senter, and saw John Chaney come into the arbor and sit down by Alonzo Payne and Miss Vicie Austin; that when church was dismissed Edgar Payne come up to John Chaney and made a motion as if to strike him, and he thought Edgar and Oscar Payne were both going to jump on John Chaney, and said, "if you both are going to jump on him, I will pull one of you off"; and Edgar Payne said, "If you will come out of the arbor, I will settle it with you." Edgar Payne walked out, followed by Jack and Jim Chaney and Tom and Horatio Jackson. That he with one or two others went with them, and the defendant followed. That they went about twenty steps. When the defendant reached them, Edgar Payne said: "Shoot him, Oscar! Shoot the damn son of a b—h; he has got a knife." And the defendant shot him in the arm and body. That he had been whittling and had a knife in his hand, but had closed it.

John Chaney testified: That he sat by Vicie Austin, and when the services ended Alonzo Payne asked her if she was ready to go home, and witness said, "I don't know." That Edgar Payne stepped up and said, "Damn you, I am going to whip you"; and Will Wyent walked up and said, "If two of you get on him, I will take one of you off"; and the defendant walked up, and Tom Jackson took hold of his shoulder and said, "Don't have any trouble here"; and Edgar Payne, speaking to witness and Will Wyent, said, "Come out of here"; and he turned around to get his hat and the others walked out, and two of his brothers, Jack and Jim Chaney, went along. That he did not see the shooting. On cross-examination he said he asked Miss Austin to let him go home with her, and she said Alonzo Payne had been going with her and he would go back with her.

Cassie Fisher, the next witness for the state, testified that she saw John Chaney come in and sit down by Miss Austin; that Will Wyent was sitting on the edge of the bench at the edge of the arbor whittling, and she saw Oscar Payne shoot at Will Wyent.

Jack Chaney testified: "I saw John Chaney walk up just as church was breaking up and sit down by the side of them. When John Chaney got up and started off, Edgar Payne asked him what he was looking so straight at him about, and about that time Oscar grabbed him by the neck and shook him." Then Tom Jackson said, "Let's don't have any trouble here tonight"; and Edgar Payne told them to come out; and Will Wyent said, "If two of you jump on him, I will pull one of you off"; and then they started and went about twenty steps from the arbor; and he followed and saw the defendant shoot Will Wyent.

Vera Wyent testified that she saw Edgar Payne draw his hand back as though he was going to hit John Chaney, and say, "You thought you were going home with her"; and Chaney said, "She would not let him"; and Edgar said, "You would not have gone if she had said you could." He then invited him away from the arbor to settle it.

Horatio Jackson and Jim Chaney testified to substantially the same state of facts.

B. F. Wyent, J. A. Sims, G. N. Gordon, Mrs. G. N. Gordon, and Avery Senter testified that after the shooting they noticed a closed penknife in the hand of Will Wyent.

In behalf of the defendant, John Payne testified that he was the father of Oscar Payne; that after the services were over he noticed a group east of the arbor having a racket, and as he walked by he said to them, "This is no place to have a racket." Just then he heard his son Edgar say twice as he stepped back, "Will Wyent, put up that knife"; and then his son Oscar said, "Will Wyent, put up that knife"; and the shooting occurred almost instantly.

The defendant as a witness in his own behalf testified: That he walked from the schoolhouse to the arbor that night with Will Wyent. That they were friends. That after the preaching was over he heard some angry voices and saw Edgar Payne and two or three of the Chaney boys and some of the Jackson boys talking, and walked up to where they were, and Will Wyent, who had been sitting there whittling, said something, and they all went out. That he followed the crowd and heard his brother say twice, "Will Wyent, put that knife down," and then say: "Oscar, look out! Will Wyent has got a knife." That as that was said Wyent came towards him with an open knife in hand, and when Wyent came within three feet of him he shot Wyent in the arm. That he shot in self-defense. That he carried the pistol because he had been held up and waylaid two weeks before this difficulty.

The record is voluminous, but the foregoing statement of facts is sufficient for the purpose of this opinion.

The first and second assignments will be considered together. They are, in effect, as follows: First, error of the court in overruling the defendant's motion for a continuance. Second, error of the court in ordering a severance upon its own motion, over the objection of the defendant.

His affidavit for continuance was filed September 12th, and contained all the formal allegations required by law, and among others the following statement:

"Because A. C. Cruce is engaged in the trial of a case in the United States court, as an attorney representing the state. That this defendant employed A. C. Cruce individually, and not the firm of Cruce & Cruce. He has paid him a part of his fee, and this defendant has been relying upon A. C. Cruce as being his leading attorney in this case. That Mr. J. C. Thompson is only associate counsel in this case, and this defendant is relying upon A. C. Cruce to defend him. That he has a right to his presence, and can procure it by the next term of court. That three of his witnesses, to wit, G. L. Bennett, Omar Bennett, and John Wyatt, are absent without his procurement or consent, and that he cannot safely go to trial without their presence. That he expects to prove by Omar Bennett that she saw Will Wyent just after the shooting, and that the said Will Wyent was lying on the ground with his knife open in his hand. That he expects to prove by G. L. Bennett that one I. N. Chaney, a witness for the prosecution, was not on the ground or at the place of the difficulty, and did not and could not see anything, or know anything about it. That he expected to prove by the said Wyatt that the said witness Chaney has made a statement different to what he swore to in the examining trial, and different from what this defendant expects the testimony of the said Chaney to be. That he had a subpoena issued and served on the said Wyatt. That the said Wyatt was here yesterday as a witness for the defendant, but was taken sick and had to leave for home, and is unable to be here now on account of his sickness. That he has had a subpoena issued for the other witnesses, G. L. Bennett and Omar Bennett, and placed in the hands of the sheriff of Carter county. That the last time he heard of said witnesses before the issuing of said subpoena they were residents of Carter county, but he has since learned that just before the subpoena was issued, or at least before the officer could get to serve it, they had left Carter county, and moved to Hastings, Okla. That he believes he can procure the attendance of all of said witnesses by the next term of said court, and can also procure the attendance of his attorney."

On the following day codefendants Edgar Payne and Floyd M. Tindle were arraigned; asked and were given the statutory time to plead. Thereupon the court overruled the defendant's motion for continuance, allowed an exception, and stated, "If there is no severance asked for, the case will be put off until tomorrow morning." Counsel for the defendant then stated: "We do not ask for any severance in this case; however, we

might ask for a severance in the morning." The Court: "If you are going to do that, gentlemen, we will proceed with the trial against Oscar Payne now." To this action of the court the defendant took an exception.

We think the court did not err in refusing to continue the case until the next term on account of the absence of defendant's leading counsel. The defendant had the benefit of the services of two thoroughly competent and experienced lawyers, W. I. Cruce and J. C. Thompson, and the motion on account of the absence of his leading counsel was not to postpone the trial to some day of the term, but to continue the case until the next term. To reverse the case on the grounds here set up with reference to the absence of counsel would be to place it within the power of counsel to control the running of the courts and the disposition of cases. We are inclined to think, however, that on account of the peculiar circumstances of this case, the court should have granted the continuance on account of the absence of the witnesses named in his affidavit. The diligence used was sufficient and the facts proposed to be proved were material. In our opinion the court exceeded its discretionary power in compelling the defendant to go to trial at that time.

We are also of opinion that the trial court in ordering a severance exceeded its discretionary power. At common law the prosecution might demand separate trials of those jointly indicted, and under the statute any defendant in a felony case may demand that a separate trial be awarded him; and it was held by this court in *Bates v. State,* 8 Okla. Cr. 436, 128 Pac. 163, that under the statute (section 5878, Rev. Laws 1910) providing that, "when two or more defendants are jointly prosecuted for a felony, any defendant requiring it must be tried separately. In other cases defendants jointly prosecuted may be tried separately or jointly, in the discretion of the court"—where the state asks it, a separate trial may be granted, in the discretion of the court. As to whether or not the state shall ask for a severance is a matter entirely within the discretion of the county attorney; he has complete control in conducting public prosecutions, subject only to the supervision of the court upon the trial. The record

here shows that the trial court ordered the severance without the state asking for it.

Numerous errors in the rulings of the court in the admission and rejection of testimony are alleged; the principal questions raised thereby being as to the admission of evidence of statements of his codefendants made in the absence of the defendant, and evidence of conversations had by the defendant with third persons prior to the difficulty, in no way connected therewith. Over the objection of the defendant, the court permitted Jesse Sloan to testify that he had a conversation with Edgar Payne and Floyd Tindle; that Tindle asked him if he felt like he could stand up under about 500 that night; that John Chaney is going to try to take Alonzo Payne's girl away from him, and we are going to see that he don't do it; that this was about an hour and a half before the shooting; that he did not see the defendant until after the shooting. Clearly this testimony was incompetent. The defendant was not present, and no connection was shown, or evidence introduced, to show that the defendant knew anything about such a statement or that he had any reason to know that his codefendants intended to assault John Chaney if he attempted to take Alonzo Payne's girl away from him. The record shows other instances where the court admitted testimony of the declarations of his codefendants, made in the absence of the defendant, that we think were inadmissible and prejudicial to this defendant.

The record shows that defendant was asked on cross-examination if, on the evening that he had a difficulty with one Alexander at the schoolhouse about fifteen days before this shooting, he did not ask Jesse Sloan to lend him a six-shooter on that occasion, and if he did not say "If a lot of those boys up there don't walk straight, I am going to kill some of the sons of b——s." He was also asked, referring to a conversation had with Miss Cassie Fisher:

"Q. About fifteen days before the difficulty at Deese, did you see her in the field near there and make this remark to her in substance or effect: 'That you were not afraid to kill anybody, because you could take a little money and come down here before this court and get out of it' "?

Also the following question:

"Q. About fifteen days before you had the difficulty at Deese, at their home, did you say in the presence of Mɪ. Hammett and his wife that you could kill any man and with a couple of hundred dollars beat it in this court, in substance or effect?"

These questions were asked, and numerous others of a similar nature, and over the defendant's objection permitted to be answered. He denied having made any such statements, and afterwards each of the parties referred to were called to the stand and over the defendant's objections permitted to be asked if the defendant so stated, and all answered in the affirmative. All this testimony was irrelevant on the question of the guilt or innocence of the defendant of the particular offense charged, as no connection whatever is shown between the declarations of the defendant as testified to by these witnesses and the offense charged. It is elementary that a witness cannot be impeached upon collateral matters, and it is error to permit the defendant as a witness in his own behalf to be cross-examined as to any distinct collateral fact not brought out in the examination in chief, with the view of impeaching his testimony by introducing other witnesses to contradict him. Whether the matter inquired of on cross-examination of the defendant and proved by the state in attempting to impeach him was collateral to the issue or not must be determined by this inquiry: Would the prosecuting attorney have been permitted to introduce it in evidence as part of the state's case? If he would not, it was collateral. If it was collateral, it was not competent to contradict it. *Welch v. State,* 104 Ind. 347, 3 N. E. 850; *State v. Townsend,* 66 Iowa, 741, 24 N. W. 535; *Moore v. People,* 108 Ill. 484.

In Wharton on Evidence, par. 559, the rule is stated thus:

"In order to avoid an interminable multiplication of issues, it is a settled rule of practice that, when a witness is cross-examined on a matter collateral to the issue, he cannot, as to his answer, be subsequently contradicted by the party putting the question."

In our opinion the testimony of the impeaching witness should have been excluded for the reason it related to collateral matters.

We do not deem it necessary to discuss the remaining assignments of error. A careful examination of the whole case leads to the conclusion that the defendant has not had that fair and impartial trial to which he is entitled.

For the reasons herein stated, the judgment of conviction is reversed and the cause remanded.

ARMSTRONG, P. J., and FURMAN, J., concur.