**Bobby Jean WEBSTER, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–292.**

Court of Criminal Appeals of Oklahoma.

Oct. 1, 1974.

Jack L. Freeman, Jim Brent Smalling, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Bill James, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant Bobby Jean Webster, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–73–1892, for the offense of Grand Larceny, in violation of 21 O.S.1971, § 1707, After a Former Felony Conviction. Her punishment was set at seven (7) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

The facts, briefly stated, show that on July 10, 1973, at approximately 4:40 p. m., the co-owner of the Daisy Patch Boutique, located at N. W. 23rd and Meridian in Oklahoma City, notified police that three Indian females whom she suspected as shoplifters, were in her store. At 4:41 the manager again called the police giving them a description of the suspects and their car and her suspicion that they had taken some clothing from her store. Minutes later the defendant and two companions were stopped by police a short distance from the shop, and they were subsequently arrested on suspicion of Grand Larceny.

At the trial, Mrs. Kathryn Hartwig, manager of the shop, testified that she became suspicious when the defendant and her two companions entered the shop on the afternoon of July 10th, each carrying an oversized purse, or diaper bag. The manager said she approached the defendant and complimented her on her bag [which she identified, in court, as State's Exhibit # 2], asking to see inside the purse. The defendant refused her request, according to the witness, and walked to a different part of the store. Mrs. Hartwig said she next approached co-defendant Thelma Gloria, who was carrying a beige diaper bag [which she identified as being State's Exhibit # 3]. The witness testified that the diaper bag was unzipped and that she was able to observe a blue and white garment inside it. It was at this point that Mrs. Hartwig called the police to alert them that she thought there were shoplifters in her store. Shortly thereafter the defendants left the store and the manager followed them to the parking lot where she obtained their license tag number and a description of the car. She testified that she then called the police again with the description of the car and women and that before the police arrived she started an inventory of the store to discover what items were missing. At trial, the witness identified Exhibit # 4 as a pair of $20.00 slacks bearing a tag from her store that she had not sold to the defendants and Exhibit # 5, an orange pant suit she discovered missing immediately after the defendants left her store. Both items were recovered in the defendant's car minutes after the incident.

Next to testify was Oklahoma City Police Officer Allen McElhaney who said that he received a radio call at 4:45 p. m. on July 10, 1973, to investigate a possible larceny at the Daisy Patch Boutique. He said that he also received a radioed description of a blue Cadillac and its license number, occupied by three Indian females. The officer testified that the initial report specified that the women had large handbags, one of the women had been seen with a blue and white garment, and that an orange pant suit was missing.

Officer McElhaney said he saw a car fitting the description which was occupied by three Indian female subjects a few minutes later, and that he and back-up Patrolman Doug Phipps stopped the vehicle. Officer McElhaney said that when he walked up to the car he observed a white pillowcase with a blue and white garment in it, laying on the passenger's side of the front floorboard, along with a large empty purse and a diaper bag. At the same time, he said Officer Phipps observed a pillowcase and an orange garment on the floor of the back seat. Offi-

cer McElhaney testified that after he observed the items [which he identified in court as State's Exhibits # 2–5], he placed the defendant and her companions under arrest in connection with the Grand Larceny charge, and that Officer Phipps read them their rights.

According to the witness, he and Officer Phipps then put defendant Gloria in McElhaney's patrol car and defendant Webster and the other woman in Officer Phipps' car. Moments later, Officer McElhaney got in Officer Phipps' car and heard the third defendant, Brigette Jones, admit, in the presence of both officers and defendant Webster that she had taken something from the Daisy Patch Boutique. Officer McElhaney said he then asked defendant Webster if that was correct and she answered that it was. He then asked defendant Jones if she took something and she repeated her affirmative answer. Following the testimony pertaining to the admissions by Brigette Jones, in the presence of the defendant, the jury was instructed that the testimony was not to be considered in relation to defendant Gloria, who was not present during the conversation, but who was in the other patrol car.

The next witness to testify was Oklahoma City Police Officer Jim Yandell, who handled the follow-up investigation on the case. Officer Yandell said he interviewed each of the defendants separately on July 11th. He said that he first spoke with defendant Webster, who admitted having been shopping at the Daisy Patch Boutique on July 10th with two companions, but who denied any theft. The policeman said he next talked with defendant Jones, who also denied any knowledge of a theft. Finally, he talked with defendant Thelma Gloria, who admitted, during questioning, that she and her companions had gone to the Daisy Patch Boutique to "take some merchandise." [Tr. 66] Officer Yandell testified that after her admission he then requestioned the other suspects, telling them of Thelma Gloria's statement, and that each woman then admitted her

participation in the incident, with defendant Webster saying she took the orange pant suit. On cross-examination, Officer Yandell reiterated that he had given each suspect her Miranda rights prior to questioning; that none of the suspects had requested the presence of an attorney; and that he had not had any of the women to sign a rights waiver form.

The State's case was concluded with Officer Yandell's testimony, and neither defendant presented evidence in her own behalf.

█ In her first proposition of error the defendant alleges that the trial court committed prejudicial error in admitting certain testimony of witness Hartwig and that failure to grant a mistrial because of this testimony constituted reversible error.

The complained of testimony is found at page 8 of the trial transcript, and the pertinent part reads as follows:

"Q. And would you tell the Court and Jury what happened at that particular time or there about?

A. At that time I had a customer looking at some jewelry, and the three defendants came in the store, and I had seen them before. The time they were in the store before, I found empty hangars—

MR. MERZ: I object to that. May I approach the bench?"

Following the testimony a discussion was held out of the hearing of the jury, during which the defendant moved for a mistrial because of the alleged evidentiary harpoon regarding a previous offense. The prosecutor admitted that the response was improper and asked for the jury to be admonished. Thereafter, the following, rather lengthy, admonition was given to the jury:

"THE COURT: Ladies and gentlemen of the Jury, the statement by the witness —we have no way of erasing anything from anybody's mind, but the answer that there is some empty hangars I am striking. You are to disregard that an-

swer. You are to do the best you can to put that out of your mind, but you are not to draw any inferences from that whatsoever. It is a spontaneous answer on the part of the witness and you are admonished that I am instructing you at this time that the case is on trial is the case against these two defendants for a particular crime on a particular time and a particular date, and that and that alone. That is the only thing that you are to consider in evidence in this case. And, once again, you are not to draw any inferences from that whatsoever in this case. And the witness will be instructed now, don't volunteer answers. Just answer the questions as the Counsel asks you, and don't elaborate unless the attorneys ask you to elaborate. All right, Mr. Warren, you may proceed." [Tr. 9, 10]

The record reveals that the alleged evidentiary harpoon was interposed by a lay witness and was an inadvertent comment, not solicited by the District Attorney, and, as set out above, the trial court admonished the jury to disregard the statement.

In Kitchens v. State, Okl.Cr., 513 P.2d 1300 (1973), dealing with a similar contention, it was held:

"The court's admonition to the jury not to consider the remarks of counsel, or a witness, usually cures an error unless it is of such a nature after considering the evidence that the error appears to have determined the verdict."

See also Holt v. State, Okl.Cr., 506 P.2d 561 (1973).

In the instant case we believe there was more than ample evidence to support the defendant's conviction and the jury would have still returned a guilty verdict had the comment of the witness never been made. This, coupled with the trial court's admonition to the jury, leads us to the conclusion that if error existed, it was harmless. Accordingly, we find defendant's first proposition to be without merit.

■ Defendant next contends that no probable cause existed for the arrest and that it was illegal. We find this contention to be totally without merit in view of the evidence presented at trial that Officer McElhaney received a radio dispatch describing three Indian female suspects, in a blue Cadillac and the license number, in possession of a blue and white garment and several large handbags. Officer McElhaney stopped the suspects in a car fitting the description several minutes after the incident in the immediate vicinity of the shop.

■ In McKay v. State, Okl.Cr., 472 P. 2d 445 (1970), this Court held:

". . . [W]e are of the opinion that the arrest based on information received from the police dispatcher that a burglary had been committed, describing the burglars, the automobile in which they left the scene, and the license number of said automobile, was based on reasonable cause and was therefore a lawful arrest and that the search incident to said arrest was a lawful search."

In addition to questioning the legality of the arrest based on the officer's probable cause, the defendant also questions the information on which the cause was based. Defendant seeks to point out that the blue and white garment first seen by the shop owner in the bag of defendant Gloria, was never shown to have been taken from the Daisy Patch Boutique, and that the other garments recovered in the possession of the defendants which were from the Daisy Patch had not been positively identified as missing by Mrs. Hartwig when she first notified the police. We dealt with a similar contention in Hill .v. State, Okl.Cr., 500 P.2d 1080 (1972), in which, following an arrest based on a radioed description, the defendants were convicted of a different crime than the one for which they were originally arrested. This Court held that the subsequent discovery by police officers of the commission of a felony other than that for which defendant was lawfully arrested does not render the initial arrest invalid. See also Battles v. State, Okl.Cr., 459 P.2d 623 (1969).

■ In her third proposition of error, the defendant alleges that she was denied a fair trial due to the introduction of statements made by the co-defendants which inculpated her. In this proposition the defendant relies primarily on Bruton v. U. S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which holds that where two or more defendants are tried jointly, and a confessing defendant does not take the stand, the introduction of his confession into evidence, together with a portion thereof in which he implicates his co-defendant, may violate the co-defendant's right to cross-examination. The defendant claims her situation falls within that described in *Bruton*, since her co-defendant did not take the stand. However, we must point out that the instant case falls more clearly within the rule modifying *Bruton* as set forth in Schneble v. Florida, 405 U. S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), which this Court cited in Gregor v. State, Okl.Cr., 505 P.2d 519 (1973).

In *Schneble,* the United States Supreme Court held that the admission at a joint murder trial in which neither defendant takes the stand, of testimony by one defendant concerning a co-defendant in the commission of the crime, is harmless error beyond a reasonable doubt as to the co-defendant where the co-defendant's own confession was detailed and completely consistent with the objective evidence and not contradicted by any other evidence in the case. The confession in the instant case falls squarely within that purview since not only was the confession of co-defendant Thelma Gloria discussed in testimony, but also the defendant's own admissions were also entered into evidence.

Finally, in regard to defendant's third contention, we would rely on Gregor v. State, supra, which is directly in point. In that case two defendants were tried jointly, neither of whom took the stand. Each contended that out-of-court confessions of the other testified to by the investigating police officer was hearsay as to the other. They further complained that the statements by a third defendant was hearsay as to both, relying on *Bruton*.

In response to this identical contention we held:

"It is difficult to see how the corroboration that grows out of one confession and affects another can further prejudice the position of one who has already freely and voluntarily confessed his own guilt."

A review of the record shows that the court instructed the jury that admissions made by co-defendant Brigette Jones immediately following her arrest were not to be considered against defendant Gloria, but could be considered against the defendant in this appeal, Bobby Jean Webster, in whose presence the statement was made. [Tr. 75] A second admonition in the record following Officer Yandell's testimony concerning defendant Gloria's admission [Tr. 83] at which time the jury was admonished not to consider the testimony about defendant Gloria in connection with defendant Webster's case; and a third instruction reciting basically the same admonition was given following the testimony about defendant Webster's admission.

■ In Gregor v. State, supra, this Court noted that in a situation where confessions of co-defendants are admitted, the best practice is for the trial judge to instruct the jury that confessions should be considered as to the confessor only and that such confessions or statements would normally be considered hearsay as to any other defendant. Clearly, the proper procedure was adhered to in the instant case.

■ In the next proposition, defendant contends that she was not advised of her constitutional rights against self-incrimination, hence any statements made by her were inadmissible. We fail to see the merit in this contention in view of the fact that a hearing out of the presence of the jury was conducted on the voluntariness of the confessions, and that it was determined at this hearing, through the testimony of Officers McElhaney and Yandell that both

officers gave the women their constitutional rights (McElhaney and Phipps at the arrest scene and Yandell prior to questioning on July 11th). We further note that in Instruction # 7, the jury was properly instructed that the determination of whether a confession was voluntary is a question of fact for the jury. This Court has repeatedly held that when a hearing is held on the voluntariness of the confession and it is found that the defendant was properly apprised of his Miranda rights, then the question becomes one for determination by the jury. See Mooney v. State, Okl.Cr., 516 P.2d 1364 (1973).

In her final proposition the defendant alleges that due to prejudicial remarks by the prosecutor in his closing statement she was denied a fair trial. In particular, defendant objected to references to her in the closing statements by the State after defendant's counsel had waived closing argument. We note, from a review of the record, that although the Assistant District Attorney did mention defendant Webster, he was admonished by the court to confine his rebuttal remarks to defendant Gloria. We fail to see where the remarks of the prosecutor were prejudicial to the defendant.

In Noble v. State, Okl.Cr., 497 P.2d 452 (1972), it was held that it is only when argument by counsel for the State is grossly improper on some point which may have affected defendant's rights that reversal can be based thereon. We fail to see where in this situation any harm resulted to the defendant from the argument of counsel. See also Samples v. State, Okl. Cr., 337 P.2d 756 (1959), where this Court stated:

"... [W]e must apply the principle long adhered to by this court that a conviction will not be reversed for alleged misconduct of the prosecuting attorney, unless this court can say that the prosecuting attorney was not only guilty of misconduct, but that such misconduct

might, in some degree, have influenced the verdict against the defendant. ..."

We find this is not the case, in view of the other overwhelming evidence.

For the reasons above set forth, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.