Willis L. PREJEAN, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–760.

Court of Criminal Appeals of Oklahoma.

Feb. 11, 1977.

Dennis Butler, Cocke, Sullivan & Butler, Lawton, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Appellant, Willis L. Prejean, Jr., hereinafter referred to as defendant, was charged with Murder in the First Degree, in violation of 21 O.S.Supp.1973, § 701.1. Defendant was tried in the Comanche County District Court, Case No. CRF-75-383, and convicted of the lesser included offense of Manslaughter in the First Degree, 21 O.S. 1971, § 711. Trial was had to a jury and punishment was fixed at imprisonment in the Oklahoma State penitentiary for ninety-nine (99) years, pursuant to 21 O.S.1971, § 715. From this judgment and sentence defendant has perfected this timely appeal.

From the evidence introduced at trial the following facts can be concluded. The defendant, a soldier at Ft. Sill, in the early morning hours of May 1, 1975, was in the proximity of a club in Lawton, Oklahoma, called the African Breeze. At sometime that morning he was approached by a Martha Jean Matthews, concerning a plan which apparently the Matthews woman had which involved the deceased, Tommy L. Gatling, also a soldier at Ft. Sill. The plan basically was that Gatling, the defendant and the woman would go to the woman's home, the woman and Gatling would retire to a back room and during this time the defendant would steal Gatling's money. The defendant procured a gun from an unidentified person at the club and accompanied Gatling and the woman to her home. At the Matthews' home an argument ensued between the woman and Gatling, at which time the defendant pulled the gun, pointed it at Gatling, took his wallet and money and ordered him to disrobe. The defendant ordered Gatling out onto the porch and into the front yard, and to leave the premises. While Gatling was in the process of leaving the house, he jumped the defendant in an attempt to get the gun away from him. In the struggle which ensued, Gatling was shot twice and from these wounds died. At the time the defendant drew the pistol and pointed it at Gatling, the Matthews woman went to the back room and aroused James Graham, who was sleeping there. She asked Graham to come out and assist the defendant. Following the shooting, defendant took Gatling's car and abandoned it in the town of Lawton, while Graham dragged the body of the deceased across the street near a mobile home and left it. The Matthews woman and Graham gathered the deceased's clothing and personal effects and carried them a short distance from the Matthews' home, and discarded them. Defendant was arrested at approximately 11:00 p. m. that evening by a Military Policeman from Ft. Sill.

Defendant's first assignment of error is that the trial court failed to state into the record his reasons for giving the lesser and included instruction on manslaughter, in violation of 21 O.S.Supp.1973, § 701.3, which provides in pertinent part, as follows:

" . . . in every instance where an instruction authorizes the jury to consider lesser and included offenses and lesser degrees of homicide, the judge shall state into the record his reasons for giving the instruction based upon the evidence adduced at trial."

We first note that defendant requested the manslaughter instruction, enumerating the specific evidence which, if believed by the jury, would support a verdict of first degree manslaughter. In granting the defendant's request for the instruction, the court stated at pages 447 and 448 of the transcript of trial as follows:

"BY THE COURT: Very well, the court, after hearing the evidence, finds that by reason of the jury being the sole deter-

miner of the credibility of witnesses, and what, if any and all portions of their evidence they shall believe, that the evidence in this case would justify, depending on that evidence believed by the jury, the jury returning either a verdict of guilty of murder in the first degree, guilty of manslaughter—or guilty of manslaughter in the first degree, and the court is going to grant the request of the Defendant and give an instruction of the lesser included offense of manslaughter in the first degree. . . . "

It is the opinion of this Court that the trial court stated its reasons into the record, and that there is sufficient evidence in the record to support the trial court's giving of the requested instruction. Since the trial court substantially complied with the statute, we find this assignment of error to be without merit.

Defendant's second assignment of error is that the trial court erred in overruling defendant's motion to suppress a confession given to the police by the defendant. Defendant asserts that he was not mentally sound or competent, sufficiently to knowingly and intelligently waive his rights under the United States Constitution.

The evidence concerning the admissibility of the confession was heard at the preliminary hearing and at a separate hearing on the motion to suppress. Also, in camera testimony concerning the events leading up to the taking of the confession was heard prior to the trial court's submission of the confession to the jury.

We note from reading the transcript of the preliminary hearing, the motion to suppress hearing, and the transcript of the trial that the defendant, at the time of his arrest and at the time of all subsequent questioning, was advised of his Miranda rights many times, of which at least seven were in writing. Then, at a separate interview, some 18 hours later, defendant again was advised of his rights in writing, and was able to coherently refer to both the events in question and to the earlier interview.

We note from the record of the trial that conflicting evidence was presented by both lay and expert witnesses from both prosecution and defense concerning the competency of the defendant. The principle witnesses for the prosecution testified that they advised the defendant of his rights which he acknowledged by signing his name to a "rights waiver" form. They testified that he appeared calm, was cooperative, and understood the nature of their inquiries. They stated that they gave the defendant the typewritten confession following its completion. He appeared to read it. He corrected the spelling of his name and initialed strikeovers and the beginnings and ends of pages, which indicated that he did, in fact, read the typewritten pages and understand their meaning.

The defense questioned a psychologist concerning the defendant's mental condition. The psychologist testified that it was possible, and even likely, that at the time the confession was made the defendant was in a mental state other than his normal one. However, the expert admitted on cross-examination that he did not actually know whether or not the defendant understood the full consequences of his waiver and confession.

We note that in instructions Nos. 9 and 10 the trial court properly instructed the jury that the question of whether or not a confession was voluntarily given and whether or not the defendant understood the meaning and effect of the confession are questions of fact for the jury. In *Webster v. State*, Okl.Cr., 527 P.2d 184, 190 (1974), we said:

" . . . This Court has repeatedly held that when a hearing is held on the voluntariness of the confession and it is found that the defendant was properly apprised of his Miranda rights, then the question becomes one for determination by the jury. . . " (Citations omitted)

It therefore appears from the record as set out above that the defendant's second assignment of error is totally without mer-

it. The judgment and sentence appealed from is AFFIRMED.

BUSSEY, P. J., and BLISS, J., concur.