Clyde PICKENS, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–78–247.

Court of Criminal Appeals of Oklahoma.

Sept. 20, 1979.

Stephen D. Colbert, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., Duane N. Rasmussen, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Judge:

Clyde Pickens, Jr., hereafter referred to as defendant, was charged, tried before a jury in a bifurcated proceeding, and convicted of the crime of Robbery With Firearms, After Former Conviction of a Felony, pursuant to Laws 1973, ch. 76, § 1, and Laws 1976, ch. 94, § 1 (now codified as 21 O.S.Supp.1978, § 801, and 21 O.S.Supp.1978, § 51), in the District Court, Carter County, Case No. CRF–77–110. The jury set punishment, and the trial court sentenced the defendant to serve ten (10) years' imprisonment. From the aforesaid judgment and sentence, this appeal was perfected.

A summary of the testimony indicates the State's witness Anna Burton was clerk at the liquor store when the robbery occurred on June 9, 1977. The witness identified the defendant as the man who entered the store with a gun at about 4:00 p. m. that day and demanded all the money. Ms. Burton fled the store, but $250.00 from the cash register and a weapon kept behind the counter were taken.

As to the stolen weapon, which was recovered and introduced into evidence, Aaron Christie, manager of a local pawn shop, testified that the defendant had pawned and later redeemed the gun. Laron Dickson further identified the gun as the one he purchased from the defendant on June 10 or June 17, 1977.

Ardmore Police Detective Captain George Elisee arrested the defendant on July 8, 1977, at the Ardmore District Attorney's Office where the defendant was assisting in the prosecution of another case. Detective Elisee testified that he and the defendant walked directly to police headquarters where the defendant signed a waiver of rights and wrote and signed a confession of the crime after being explained his *Miranda* warnings.

Special District Judge Thomas S. Walker, who had presided over the defendant's initial appearance, testified that he had received a letter from the defendant, and after an Oklahoma Bureau of Investigation handwriting expert testified the letter had been written by the defendant, the letter was introduced into evidence. The letter consisted of an admission of guilt and a plea of mercy for a second chance by the defendant.

A series of witnesses testifying in the defendant's behalf stated that the defendant had been in and out of the Eastside Domino Parlor on the date of the robbery. Numerous witnesses, including a Carter County Deputy Sheriff, testified that the defendant, who wore a beard at trial, had worn one at the time of the robbery. Such testimony was contradictory to that of Anna Burton who had stated at the preliminary hearing that the defendant was clean shaven during the robbery and, during the State's case in chief, that although he did not have a beard, he was in need of a shave.

Testifying in his own behalf, the defendant contradicted much of the testimony of prior witnesses. He stated that at the time of the robbery he was playing dominoes at the Eastside Domino Parlor and also that he wore a beard at that time. He further testified that on June 5, 1977, he purchased the weapon stolen from the liquor store from Stanley Gaines, since deceased.

With regard to his confession and letter, the defendant repeated the testimony he gave at an earlier motion to suppress hearing that Detective Elisee had taken him to a local cemetery where he beat him severely and threatened to do so again unless he signed the confession and wrote the letter. He further related that he would not sign a confession or write such a letter unless coerced.

State's rebuttal witnesses testified the defendant was clean shaven about the time of the robbery.

■ The first assignment of error is that the trial court erred in giving the jury a "logjam" instruction after the jury had ad-vised the court they could not reach a verdict. Upon returning to open court, the jury was instructed:

"THE COURT: Ladies and Gentlemen of the jury, I have received a note from your Foreman to the effect 'Judge, we cannot reach an agreement, signed, Walter Thompson, Foreman.' Considering that note, I have prepared one last instruction. At this time I will place this with the Court Clerk for filing and read Instruction No. 9. This is an important case. If you should fail to reach a decision the case is left open and undecided. Like all cases, it must be decided sometime. Another trial would be a heavy burden on both sides. There is no reason to believe that the case can be tried again any better or more exhaustively than it has been. There is no reason to believe that more evidence or clearer evidence will be produced on behalf of either side. Also, there is no reason to believe that the case would ever be submitted to 12 people more intelligent or more impartial or more reasonable than you. Any future jury must be selected in the same manner that you were. These matters are mentioned now because some of them may not have been in your thoughts. This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision. This does mean that you should give respectful consideration to each others' views and talk over any difference of opinion in the spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion that this case may be completed. You may be leisurely in your deliberations as the case may require and take all the time necessary. The giving of this instruction at this time in no way means that it is more important than any other instruction. On the contrary, you should consider this instruction together with and as part of the instructions which I previously gave you. You may now

retire and continue your deliberations. Mr. Bailiff, you have already been sworn, would you now take this instruction and the jury room for further deliberation."

Relying on *United States v. Cheramie*, 520 F.2d 325 (5th Cir. 1975), counsel for the defendant contends that the instruction was coercive and overreaching in that it exhorted the minority to re-examine its views in light of the majority's view, induced the erroneous perception that the jurors have an absolute "duty to decide," and strongly suggested the failure to decide would reflect unfavorably on the jury members. On the contrary, we find this instruction to be a model of fairness. The jurors were clearly advised against surrendering their convictions for the sole purpose of arriving at a verdict. The purpose and effect of the court's instruction was to guide and assist the jury in reaching a fair and impartial verdict, if such was possible. On numerous occasions, we have held that the giving of similar instructions was within the sound discretion of the trial court. See, for instance, *Glaze v. State*, Okl.Cr., 565 P.2d 710 (1977). We therefore find this assignment of error to be without merit.

■ The second assignment of error is that the trial court erred by refusing the defendant's request to make a personal plea to the jury during the second stage of the bifurcated proceedings. In support of this contention, counsel for the defendant cites 22A C.J.S. Criminal Law § 600, page 400, and the Oklahoma cases listed thereunder for the proposition that evidence in aggravation or mitigation of the offense is generally admissible where the jury assesses punishment on a verdict of guilty. Although these citations of authority are not in point, we agree that in a proceeding such as this the defendant is entitled to testify concerning prior convictions relied upon by the State to enhance punishment.

The Oklahoma Constitution, Art. II, § 20, provides that the defendant shall have the right to be heard by himself and counsel, and under 22 O.S.1971, § 13, a defendant in a criminal case is entitled to "be allowed counsel, as in civil actions, or to appear and defend in person and with counsel; . . ."

■ We are unpersuaded by the State's assertion that it would be prejudiced if the defendant was allowed to make such a plea, since if what the defendant wished to do was to testify, the State would have been entitled to cross-examine him, and if he had wished to make the closing argument the State would have had a similar opportunity. In any event, the defendant here was not requesting the right to testify; his request, rather, was to make a personal plea for mercy by addressing the jury, and that is a function of defense counsel. During the enhancement stage of a bifurcated proceeding, the only issue is the existence of a prior conviction upon which enhancement can be based. In this proceeding, the defendant had already admitted a prior conviction competent for that purpose.

In essence then, the defendant's request was to act as his own co-counsel. In *Fowler v. State*, Okl.Cr., 512 P.2d 238, 246 (1973), we said:

"In the trial of a criminal case where the defendant is represented by counsel, one or the other must be in charge of the defense in order to preserve orderly procedure in the court. . . ."

We went on to hold in that decision that the trial court did not abuse its discretion in restricting participation of the defendant.

We further recognized in *Stiner v. State*, Okl.Cr., 539 P.2d 750 (1975), the holding of the federal courts that there is no constitutional right to hybrid representation, partially pro se and partially by counsel.

■ In the instant case, the defendant was represented by counsel, and at no point did he attempt to waive representation and proceed pro se. Insofar as the defendant received the minimum sentence provided by statute and therefore was not prejudiced by the denial, we are of the opinion that the trial court did not abuse its discretion in denying the defendant's request to address the jury, and so hold this proposition to be without merit.

■ The defendant's next assignment of error is that the trial court erred in ordering a bifurcated proceeding to assess punishment over defendant's objection and after the defendant had admitted two prior felonies during the first stage. Defendant acknowledges the holding of *Edwards v. State*, Okl.Cr., 554 P.2d 46 (1976), and *Carney v. State*, Okl.Cr., 406 P.2d 1003 (1965), that the trial court does not err in adhering to the guidelines of 22 O.S.1971, § 860, by refusing defendant's motion to waive the second stage of the proceeding. Insofar as the defendant cites no authority in support of his argument for change and since he was in no way prejudiced by the denial, we find this assignment of error to be without merit.

The fourth assignment of error concerns the defendant's written confession, given at police headquarters, and a letter written by the defendant to Special District Judge Thomas S. Walker. At a hearing on his motion to suppress the confession and letter, the defendant testified that before being taken to police headquarters he was beaten by arresting officer Elisee and threatened by that officer that he would be beaten to death if he did not sign the confession and write the letter. The lower court overruled the motion and this is assigned as error.

In support of this allegation of error, counsel for the defendant contends that the State failed to rebut the defendant's testimony. The transcript of that hearing reveals, however, that testimony of Officer Elisee was introduced without objection in the form of a transcript of his preliminary hearing testimony. At that hearing, the officer had denied any use of coercion and stated that the defendant volunteered the confession. The fact the defendant had made no mention of coercion at court appearances prior to the motion to suppress hearing, plus testimony of an officer present when the defendant wrote the confession that he had observed no threats or beatings, provided additional support for the court's ruling.

■ If the trial judge at a motion to suppress hearing is satisfied that the *Miranda* warnings were given and that the confession was voluntarily made, he must submit the question to the jury. Under proper instructions it then becomes a matter for their determination. *Prejean v. State*, Okl. Cr., 560 P.2d 223 (1977); *Webster v. State*, Okl.Cr., 527 P.2d 184 (1974). The evidence introduced at the motion to suppress hearing supported the trial court's finding, and the jury was properly instructed on the matter. We therefore find this assignment of error to be without merit.

The defendant next asserts that the sentence imposed was excessive. We find no merit to this assignment of error since the sentence is the minimum allowable under 21 O.S.Supp.1978, § 51.

It is the defendant's final assignment of error that the court erred in permitting the prosecution to offer into evidence a letter written by the defendant to the District Attorney's Office in a prior felony prosecution. In that letter, which related to a 1975 Larceny of an Automobile case, defendant admitted committing the crime but pled for a second chance on the basis that he would reform himself if given the opportunity. The defendant wrote a similar letter in this case, admitting commission of the robbery and asking for mercy.

On direct examination, the defendant admitted writing the letter in the instant case, which had been admitted in the State's case in chief, but asserted that it was coerced and that he would not have written such a letter voluntarily. On cross-examination, the defendant admitted he had written the prior letter, that he had done so voluntarily and that its import was similar to that of the instant letter. The prior letter was then introduced into evidence.

Counsel for the defendant contends that the prior letter was too remote in time, as well as irrelevant and prejudicial, and that it should not have been admitted into evidence. He further complains that the State failed to produce the prior letter pursuant to a pretrial motion for discovery, to which the State had confessed.

When a defendant takes the witness stand he is subject to all the rules applicable to other witnesses. *Wilson v. State*, Okl.Cr., 461 P.2d 980 (1969). When, however, a defendant is cross-examined on collateral matters for the purpose of testing his credibility as a witness, the party cross-examining is bound by the answer of the witness and cannot subsequently introduce extrinsic evidence to contradict. *Moon v. State*, Okl.Cr., 475 P.2d 410 (1970); *Tarter v. State*, Okl.Cr., 359 P.2d 596 (1961); *Payne v. State*, 10 Okl.Cr. 314, 136 P. 201 (1913).

Thus, we held in *Brown v. State*, Okl.Cr., 487 P.2d 963 (1971), that it was reversible error in the trial of a defendant for the sale of LSD to permit witnesses to rebut the defendant's denial on cross-examination that he had sold drugs on other occasions. In this instance, however, the defendant opened up the issue to inquiry by stating on direct examination that he would not have written such a letter voluntarily. By so doing, the prior letter became relevant to attack his credibility as a witness and, as such, ceased to be collateral. Had the defendant denied writing the letter on cross-examination, it clearly would have been admissible to contradict his testimony. *Cherry v. State*, Okl.Cr., 544 P.2d 521 (1976); *Fite v. State*, Okl.Cr., 526 P.2d 956 (1974); *Kite v. State*, Okl.Cr., 506 P.2d 946 (1973).

Furthermore, a two year old letter is not so remote in time that the trial court exceeded its discretion on that ground. See *Dickey v. State*, 97 Okl.Cr. 28, 257 P.2d 319 (1953). Nor was the letter exculpatory in nature, so as to be subject to discovery by the defense.

That the defendant had written the prior letter voluntarily is irrelevant; however, it was introduced to prove that he had a propensity to write such letters and, therefore, had written the second one. I Wigmore on Evidence, § 192 (3rd ed. 1940). The only justification for introduction of the letter was to impeach the defendant's credibility, and since the defendant had admitted writing the prior letter, the prejudicial effect of introducing it outweighs its relevancy for that purpose. We agree, therefore, that the court erred in admitting the first letter. However, in light of the overwhelming evidence of the defendant's guilt, independent of the letter and the confession, we are of the opinion that the error did not affect the outcome of the trial. For that reason this assignment of error is without merit.

Insofar as none of the errors asserted on appeal bear substance, the judgment and sentence should be and, hereby, is *AFFIRMED*.

CORNISH, P. J., concurs in results.

BUSSEY, specially concurs.

BUSSEY, Judge, specially concurring:

I agree that the conviction should be affirmed and am of the further opinion that the trial court did not err in permitting the State to introduce the letter written to the District Attorney.